308 So.2d 443 (1975)
George LEBLANC, Plaintiff-Appellee,
v.
ROY YOUNG, INC., Defendant-Appellant.
No. 4875.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1975.
Rehearing Denied March 12, 1975.
Writ Refused June 6, 1975.
*444 Young & Burson by I. J. Burson, Jr., Eunice, for defendant-appellant.
S. Michael Cashio, and Randall J. Cashio, Baton Rouge, for plaintiff-appellee.
Davidson, Meaux, Onebane & Donohoe by L. Lane Roy, Lafayette, for defendant-appellee.
Before FRUGÉ, CULPEPPER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This case, tried by jury, arises out of an oilfield accident which occurred on November 6, 1971, in which the plaintiff, George Leblanc, a roughneck, was injured, while in the employ of Pernie Bailey Drilling Company, Inc. Plaintiff brought this suit in tort against Roy Young, Inc. alleging that the sole cause of his injuries was the negligence of one Homer Cuvillier, a crane operator employed by the defendant corporation. The defendant answered, denying *445 any negligence on the part of the company or its employees, specifically pleading the "borrowed servant" doctrine as a defense, and filing third party actions against Pernie Bailey and three of its employees, Floyd Marks, Andrew Aymond, and Alton Barron. A motion for summary judgment was subsequently filed on behalf of the third-party defendants on the theory that all had been released from any liability in the matter via a judgment rendered pursuant to a previous workman's compensationexecutive officer and employee settlement. The motion for summary judgment was granted on March 14, 1973. A trial was subsequently had before a jury which resulted in a verdict for the plaintiff and against the defendant in the sum of $50,000.00. The presiding judge thereupon rendered judgment in favor of the plaintiff for $50,000.00, but reduced by one-half the award, to $25,000, because of the jury's finding that Floyd Marks, a co-employee of the plaintiff, was a joint tort-feasor with the defendant, and had been released in the aforementioned compromise agreement. From said judgment defendant prosecuted this appeal. Plaintiff in turn answered the appeal seeking an increase in the award, and a reversal of the finding of negligence on the part of Floyd Marks.
The facts leading up to this suit are as follows: On November 6, 1971, a telephone call came in to Roy Young, Inc. in Abbeville, Louisiana. The purpose of the call was to transmit a request from Pernie Bailey for the defendant-company to send a crane (dragline) and an operator to a job site on the bank of the Atchafalaya River in St. Landry Parish for "rig-down" operations. Someone from Roy Young, Inc. in turn dispatched a "low-boy" truck and a 35-ton Bucyrus Erie dragline to the Pernie Bailey rig. The truck was driven by an employee of the defendant who was accompanied by the crane operator, Homer Cuvillier. The latter was also a regular employee of Roy Young, Inc.
When the truck arrived at the job site the crane was removed and Cuvillier, with the help of the truck driver, began to "rig-up" the dragline. Some time thereafter Herbert Antie, a Pernie Bailey tool pusher, informed Cuvillier that when he was finished "rigging-up" he (Cuvillier) was to move the crane to the oil derrick where the "crown section" would be removed, in order to send it for repairs. The "crown section" is the extreme top part of the derrick, containing numerous sheaves (Wheels) from which the inner cables of the rig hang. On the day in question the derrick was lying in a horizontal position on jacks, approximately 12 to 15 feet off the ground.
After Cuvillier finished "rigging-up" the dragline, he advanced the crane to the derrick, positioning the crane and boom, and lowered the lifting line, with a lifting sling attached, to Floyd Marks, a Pernie Bailey driller, and the plaintiffGeorge Leblanc, a roughneck (both of whom had positioned themselves within the derrick structure to remove the bolts holding the bottom of the crown section to the rest of the derrick). Also working with the two men were two other Pernie Bailey roughnecks, Andrew Aymond and Alton Barron, both of whom were working on the top of the horizontal derrick at the time of the accident, attempting to pry the crown section loose. When all but one bolt had been removed, the plaintiff took the lifting sling, passing it through and attaching it to one of the sheaves or wheels on the crown section. After he had made the tie, Leblanc looked to the crane operator for approval of the tie and when no response was forthcoming the plaintiff asked his driller, Floyd Marks, if the tie was alright. The driller responded in the affirmative and the crane operator was given the sign to take a bind, or put tension on the line, in order that the last bolt could be removed. Leblanc in turn removed the last bolt at which time the crown section shifted or tilted, rolling over, flipping inside the derrick, and striking the plaintiff on the left knee. As a result of the accident plaintiff sustained serious injuries to the left leg and knee and *446 partial permanent disability of the lower extremity.
Upon the conclusion of the aforementioned trial, the jury rendered a special verdict, finding essentially the following: (1) Roy Young, Inc. [or its employee(s)] was negligent and this negligence was a proximate cause of the accident; (2) The plaintiff, George Leblanc, was not contributorily negligent; (3) At the time of the accident Homer Cuvillier was not working as a "borrowed servant" of Pernie Bailey; (4) Pernie Bailey [or its employee(s)] was negligent, such negligence being a proximate cause of the accident; (5) Regarding the Pernie Bailey employees: (a) the driller, Floyd Marks, was negligent; (b) the roughnecks, Andrew Aymond and Alton Barron, were not negligent; (c) Marks' negligence was a proximate cause of the accident; (6) George Leblanc's damages amounted to $50,000.00.
The first issue presented is the finding by the jury that the defendant Roy Young, Inc. or its employee(s) was negligent and that said negligence was a proximate cause of the accident. It is evident from the record (since no acts of negligence on the part of the company itself were alleged or proven) that this finding was based on the theory of "respondeat superior", i. e. that Roy Young, Inc. was responsible for any harm caused by its employee (s). As a result, this brings us to a consideration of whether any actions on the part of Homer Cuvillier did in fact constitute negligence which was a proximate cause of the accident.
The facts indicate that the cause of the accident herein was two-fold. First, the tie which was made on one of the sheaves (wheels) of the crown section was inherently unsafe. As pointed out in the expert testimony of Robert D. Owen, a safety consultant, this attachment was at a pivot point which would necessarily cause the section to shift or flip down once it was raised by the crane. The second cause of the accident was the fact that the dragline was apparently slightly to the left of center of the crown section, and boomed at such an angle to cause the crown section once detached, to be drawn back in towards the inner part of the derrick. We opine that both are equal and contributing causes of the accident and resulting injuries to the plaintiff. In other words, if either (1) the tie had been made in a safe and proper method or (2) the dragline had been correctly positioned, we feel the accident herein would not have occurred.
We find ample evidence to support a finding that Cuvillier was at least responsible for one of the above mentioned causes[1] of the accident, i. e. the incorrect positioning or faulty placement of the dragline.
Cuvillier was an experienced dragline operator, working for the defendant in this capacity for some 11 or 12 years. During this period he had on a number of occasions helped in tearing down or "rigging-down" oil derricks. He, however, testified that previous to this accident he had never personally been involved in taking a crown section off by itself, the usual procedure being to tear down a larger derrick section with the crown attached. This fact was not conveyed to any of the parties present. Although in his testimony Cuvillier attempts to place the responsibility of positioning the dragline on the Pernie Bailey workers, the record simply does not support this contention. Crane operators are highly skilled workmen and are presumed to know of the hazards involved in the performance of their duties in respect to the operation of their large and potentially *447 dangerous equipment. It was the operator's job to conduct the operation within the capability of the crane in a safe manner. Cuvillier was the expert and in this respect it was his responsibility to use such caution and skill as was commensurate to the total situation. We find no manifest error in the jury's finding on this point.
The second issue presented is the jury's finding that there was no contributory negligence on the part of the plaintiff George Leblanc.
Plaintiff testified that he had never theretofore been involved in the disassembly of a crown section from the derrick, nor had he ever "tied on" to a crown section. He further indicated that in his experience of tearing down a rig he was often corrected by the operator or swamper on the proper tie or hookup to be made. On the day in question, Leblanc testified he was taking his orders from his driller, Floyd Marks. As aforementioned, after he connected the crane's drop line to the sheave on the crown section, Leblanc looked at the crane operator to inquire if everything was correctly done. When Cuvillier did not answer, the plaintiff then likewise questioned the driller, who replied that it was. This latter fact is corroborated by one[2] of the other roughnecks present, Alton Roy Barron. Under these facts the plaintiff in our minds could only assume that both the operator and his immediate supervisor, the driller, were competent in their respective fields and would have informed him if they felt the tie was unsafe. Accordingly, we feel there is sufficient evidence to justify a verdict that the plaintiff was not contributorily negligent.
This brings us to a consideration of the third issue presented, i. e. the alleged defense of the defendant that Cuvillier was the "borrowed servant" of Pernie Bailey. Finding this defense applicable would mean that Pernie Bailey, rather than the defendant, would be liable for the negligence of Cuvillier. Specifically it is argued that defendant leased the crane and operator to Pernie Bailey for a set rate and that the operator of the crane was at all times, including when the accident occurred, under the direct and exclusive supervision and control of Pernie Bailey employees.
The leading Supreme Court decision concerning the "borrowed employee" doctrine is Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137 (1951). Our appellate courts have also considered this question many times, and numerous cases are cited by counsel for both parties herein.[3]
As pointed out by this court in Kezerle v. Hardware Mutual Casualty Co., 198 So.2d 119 (La.App. 3rd Cir. 1967), writ refused 250 La. 918, 199 So.2d 921 (1967):
"In these cases the courts have consistently held that there is a presumption that the general employer is responsible in damages for the torts of his employee. If the general employer seeks to avoid liability on the ground that his employee is the `borrowed servant' of another, then the burden of proof rests upon the general employer (...) to show that *448 as to the particular work in question the servant has been loaned, that the relationship of master and servant which theretofore existed between the general employer and employee has been suspended, that a new relationship of master and servant has been created between the borrowing employer and that employee and that this new relationship was in existence at the time the accident occurred.
A test which has been applied consistently in determining whether a person is a borrowed servant is to ascertain who controls him in that employment, and who has the power and right to control and direct him in the performance of his work. In order to establish that the employee is the borrowed servant of another, we think it is essential for the general employer to establish, among other necessary elements of proof, that the borrowing employer exercises control over the employee and has the right to control him, that the general employer has relinquished the right to control him, and that the employee is performing work for the borrowing employer and in the latter's business."
Whether a person is a "borrowed servant" is an issue of fact, property presentable to a jury for its consideration. Barrois v. Service Drayage Co., 250 So.2d 135 (La.App. 4th Cir. 1971). Herein the trial judge charged the jury in detail regarding the borrowed servant rule, and the jury concluded that, under the facts of this case, Homer Cuvillier was not the borrowed servant of Pernie Bailey. We find no error in this conclusion.
In applying the above criteria to the instant case, the record shows that Cuvillier was a long time employee of the defendant Roy Young, Inc. On the day of the accident Cuvillier was selected by his employer to go out on the job to the Pernie Bailey drill site. Only Young had the power to discharge Cuvillier. Cuvillier was paid by his employer for the duties rendered on the day in question. The dragline (with accompanying operator) was rented to Pernie Bailey on an hourly basis to do whatever work the drilling company wanted. The crane and operator were specifically hired to assist in a "rig-down" operation, obviously to lift and move extremely heavy portions of the drilling rig.
The crucial question therefore is who had the right of control over Cuvillier during the particular act giving rise to the accident. Did the master-servant relationship between Cuvillier and Roy Young, Inc. terminate and a new like relationship develop between Cuvillier and Pernie Bailey? We submit under the facts presented that such a change in control did not take place.
The record shows that although Cuvillier was told by the pusher on the drill site what his exact job would be, Cuvillier was in complete control of how the job was to be done. None of plaintiff's fellow employees (or employer) exercised any control over the operation of the dragline. Cuvillier himself positioned his dragline next to the derrick and dropped the line which was to be attached to the crown section. The fact that the services of the dragline required cooperation with and from the Pernie Bailey employees was not the certain and complete assumption or change of control as required for the doctrine to be applicable. All of the testimony presented, with the sole exception of Cuvillier, indicated the crane operator had the final word in the lifting of the crown section. No relinquishment of control is shown by the evidence. As a result, defendant has failed to sustain its burden of proof and overcome the aforementioned presumption.
The next issue raised is the question of co-negligence on the part of Pernie Bailey or its employees. Stemming from an answer to this question is also the matter of contribution or proration among the co-tort-feasors. As aforementioned, the jury found Pernie Bailey or its employee) negligent and specifically found Floyd Marks (the driller in charge) negligent, such negligence being the proximate cause of the plaintiff's injuries. The jury *449 also found the plaintiff's fellow roughnecks, Andrew Aymond and Alton Barron, free of negligence. As a result of the jury's finding that Floyd Marks was a joint tort-feasor (and therefore liable in solido with the defendantRoy Young, Inc.), as well as the fact that he had been released by the plaintiff along with Pernie Bailey and its other employees, the trial judge reduced the jury award by one-half.
The defendant appeals from said findings alleging that Aymond and Barron were also negligent and that, in turn, the jury award should have been reduced proportionately to their liability. The stated basis for such argument is that the two men "were part and parcel of the whole operation" and that they "pulled the last bolt out" of the crown section leaving the plaintiff "kneeling below them in an obvious position of danger". We find no basis for such allegations. Both of the roughnecks merely helped to remove bolts connecting the crown section and pry the crown section loose. Neither had anything to do with making the tie or hookup of the crown section to the crane, in positioning the crane or its boom, and were likewise not in a supervisory position. We also find as a matter of fact that it was the plaintiff who removed the last bolt holding the crown section to the rest of the derrick. No other acts of negligence were alleged or shown. Therefore we find no error in the jury's verdict in this particular.
Defendant argues additionally that Pernie Bailey was also found by the jury to be independently negligent and that the award should have been reduced at least by an additional one-third, i. e. three joint tort-feasorsthe defendant, Floyd Marks, and Pernie Bailey. This allegation is apparently based on an averment (appearing for the first time in briefs to this court)[4] of negligence also on the part of Herbert Antie, the tool pusher at the scene of the accident.
At the outset we note that, according to the answers to the special interrogatories submitted, the jury did not find Pernie Bailey to be independently negligent. Instead they merely answered in the affirmative the following interrogatory.
10. On the occasion of the accident involved in this case, was Pernie Bailey Drilling Company, or any of its employees negligent? (Emphasis added)
Despite this fact, we find no merit to the argument for the additional reason that Pernie Bailey's alleged liability is based on the company's master servant (respondent superior) relationship, i. e. employer of the tool pusher. LSA C.C. Art. 2320. The company's alleged liability is therefore purely vicarious or secondary, rather than in solido, with its employee(s). The right to contribution is based upon solidary rather than vicarious liability. LSA C.C. Art. 2103.
It is only when the employer is shown to be independently negligent that the obligation would become solidary between employer and employee, both then becoming joint tort-feasors. Caldwell v. Montgomery Ward & Company, Inc., 271 So.2d 363 (La.App. 2nd Cir. 1972); Little v. State Farm Mutual Automobile Ins. Co., 177 So. 2d 784 (La.App. 1st Cir. 1965). No such independent negligence was shown in this case.
Plaintiff in his answer to the appeal, also alleges[5] error in the aforementioned jury's particular finding. Specifically, it is argued that Floyd Marks was not shown by a preponderance of the evidence to be negligent. The jury ruled to the contrary and we find sufficient justification in the record for such holding. Floyd Marks was the driller in charge of the three roughnecks in his crew (including the plaintiff) on the day of the accident. Marks was questioned by the plaintiff *450 as to the correctness and safety of the "hook-up" made from the crane line to the crown section. The driller answered the plaintiff in the affirmative. We found as a matter of fact that this tie or "hook-up" was not safe and that it was a proximate cause of the resulting accident. Under the particular circumstances present, we opine that the driller in charge should have known of the probability of the crown section shifting, with it tied in such a fashion, and of the danger occasioned with a shifting. His failure to realize or remedy the danger present constitutes negligence on his part.
The last issue raised is that of quantum. Plaintiff answered the appeal seeking an increase in the jury verdict from $50,000.00 to $100,000.00.
We are fully cognizant of the restrictions placed upon an appellate court in reviewing the amount of damages awarded by the trial court or a jury. Henry W. Anderson v. Welding Testing Laboratory, Inc., (1974) 304 So.2d 351 (La. 1974) and cases cited therein. This rule of review applies equally to decreasing or increasing an award. Bitoun v. Landry, 302 So.2d 278 (La.1974). Thus, it is only when the record demonstrates the award to be so excessive or so inadequate, as to constitute abuse of the "much discretion" placed in the trier of fact, that the appellate court can increase or decrease same. Under the particular facts presented herein we find the inadequacy of the award to be so great as to compel an increase by this court. See: Simmons v. Travelers Ins. Co., 295 So.2d 550 (La.App. 3rd Cir. 1974), writ refused 299 So.2d 795 (La.1974).
The injuries sustained by the plaintiff were described essentially as: (1) comminuted fracture of the upper portion of the tibia (bone below the kneecap) extending into the left knee; the bone had "split down the middle"; (2) fracture of the lower left femur (thigh bone above knee) extending into the articular surface of knee; part of the femur bone had been "pulled off"; (3) torn knee ligaments and cartilages; (4) part of knee joint split open. These injuries were termed "very severe" by the treating orthopedic surgeon, Dr. Luke Bordelon. Plaintiff was hospitalized some 22 days during which time an operation was performed (inserting a metal pin in the knee) and the leg put in traction. Therapy treatments were thereafter administered. Doctor Bordelon placed great emphasis in his testimony on the severity of the pain experienced by the plaintiff during this entire period. Because of this continuing pain, a second exploratory operation was performed in August, 1972. At this time torn cartilages, loose ligaments, and loose pieces of bone were found. The cartilages were removed, the bone splinters cleaned out, and the ligament repaired as best as possible. By November, 1972, (a year after the accident) plaintiff's condition was improving but he was continuing to experience severe pain and trouble with traumatic arthritis under the kneecap. At this time the doctor recommended a third operation which as of the trial date had not yet been performed. The doctor also was of the opinion that eventually plaintiff would have to have a "total knee replacement" where the knee is completely removed and a plastic and steel replacement inserted.
At the time of trial the doctor was of the opinion that (a) plaintiff's knee would never be normal or pain-free; (b) the knee had a tendency to slip forward and grating was present; (c) even after another operation, it would be six to twelve months before plaintiff could return to some type of light activity; (d) plaintiff would never (even with operation) be able to go back to any job (such as roughnecking) which requires climbing, prolonged standing, or stooping; (e) estimated permanent physical disability of the lower extremity was 35% and an operation would improve only the pain and not the percentage of impairment.
Plaintiff was a 28 year old male and employed as a roughneck at the time of his injury. His education is limited to finishing the eighth grade. He has never held any jobs except those associated with hard *451 labor. There is no real question but that he is permanently disabled and will never be able to return to work which requires hard labor. In our opinion his education limits him to do otherwise. Plaintiff is married and the father of three children. Income tax returns introduced in evidence indicates plaintiff's income to have ranged from $5,275.71 in 1967 to $7,568.48 for the year in which he was injured, 1971.
After considering the severity of plaintiff's injury, the accompanying pain and suffering, the resulting disability, and such factors as age, loss of future earnings, and life expectancy, we feel that the increase of $50,000.00 sought by the plaintiff on this appeal is appropriate and would do substantial justice between the parties.
Accordingly the judgment of the trial court is amended to increase the award to the amount of $100,000.00. The defendant is of course responsible for only one-half this amount due to the release by the plaintiff of a joint tort-feasor. In all other respects the judgment is affirmed. Costs of this appeal are assessed to defendant-appellant.
Amended and affirmed.
NOTES
[1] In light of this holding we need not rule upon the question of whether Cuvillier's continuation of the lift in spite of the unsafe tie was also negligence on his part. He did, however, testify that he clearly witnessed the tie or hookup made by the plaintiff but did not know the crown would flip once it became unbolted. There is strong argument, however, for the proposition that, as an expert, he should have known the tie was improper and unsafe and as a result should have refused to make the lift until corrected.
[2] Neither Floyd Marks nor Andrew Aymond were called to testify.
[3] Those cases applying the "borrowed servant" doctrine include: Commercial Union Ins. Co. v. Bringol, 262 So.2d 532 (La.App.4th Cir. 1972); Brown v. B & G Crane Service, Inc., 194 So.2d 746 (La.App.4th Cir. 1966), writ refused 250 La. 534, 197 So.2d 79 (1967); Truitt v. B & G Crane Service, Inc., 165 So.2d 874 (La.App.4th Cir. 1964); Miller v. B. Lewis Contractors, Inc., 103 So.2d 592 (La.App.1st Cir. 1958). Those finding the doctrine inapplicable include: Pagitt Well Service. Inc. v. Sam Broussard, Inc., 293 So.2d 631 (La.App.3rd. Cir. 1974); Barrois v. Service Drayage Co., 250 So.2d 135 (La.App.4th Cir. 1971); Universal Engineers and Builders, Inc. v. Lafayette Steel Erec. Corp., 235 So.2d 612 (La.App.3rd Cir. 1970); Kezerle v. Hardware Mutual Casualty Co., 198 So.2d 119 (La.App.3rd Cir. 1967).
[4] Antie was not made one of the original third party defendants by Roy Young, Inc., nor was the jury questioned in interrogatories submitted in regard to his possible negligence.
[5] This allegation is made because of the district judge's reduction by one-half the jury verdict for the reason that Marks was held to be a co-tort-feasor with the defendant and released prior to this trial.