327 So.2d 578 (1976)
Eugene C. FONTENOT, Plaintiff-Appellant,
v.
Mr. and Mrs. John Allen GUILLORY et al., Defendants-Appellees.
No. 5354.
Court of Appeal of Louisiana, Third Circuit.
February 18, 1976.
Rehearing Denied March 11, 1976.
Writ Refused April 23, 1976.
*579 Preston N. Aucoin, Ville Platte, for plaintiff-appellant.
Gist, Methvin & Trimble by DeWitt T. Methvin, Jr., Alexandria, J. William Pucheu, Ville Platte, for defendants-appellees.
Before MILLER, WATSON and CUTRER, JJ.
CUTRER, Judge.
Suit was brought by plaintiff, Eugene C. Fontenot, for injuries sustained as a result of a motorcycle-automobile accident allegedly caused by the negligence of the minor son of defendants, Mr. and Mrs. John Allen Guillory. Also made defendant was State Farm Mutual Automobile Insurance Company, defendant's automobile liability insurer and plaintiff's automobile insurer. A pre-trial stipulation left for the court's determination the question of quantum and insurance coverage. Judgment was rendered in favor of plaintiff awarding him a total of $72,498.18, plus legal interest, subject to a credit for amounts already paid by defendants. Plaintiff has appealed from that judgment asking for an increase in quantum as well as a reversal of the trial judge's decision which limited the insurance coverage available to plaintiff. Defendant, John Allen Guillory, has answered the appeal asking for a reduction in the amount of the damages awarded. We affirm.
The accident which brought about this litigation took place on March 4, 1974, about 6:30 in the evening. The collision took place on Louisiana Highway 104 in Point Blue, Evangeline Parish, Louisiana. Plaintiff was proceeding in an easterly direction on La. Highway 104 at the time of the accident. Ricky Guillory, the fifteen year old son of defendants, was driving the family automobile, a 1964 Chevrolet. He was attempting to leave the parking area of a store located adjacent to the highway, and as he entered the highway he struck the plaintiff. Defendants do not dispute the contention by plaintiff that the accident was caused solely by the negligence of Ricky Guillory, for which his father is vicariously liable. The issues before the trial court and this court involve only quantum and a determination of insurance coverage available.
*580 On appeal plaintiff alleges error on the part of the trial court in failing to award plaintiff his loss of past earnings. Plaintiff lost $3,155.16 in wages in connection with his employment with the Department of Public Works. In addition, he had part-time jobs with the Snack Snack and with the Kwik Serve. The total of lost wages from part-time employment during the six-month period of disability as a result of the accident was $1,251.92. The trial judge's written reasons for judgment clearly indicated that the plaintiff's lost wages were included within the award made. The language of the court is as follows: "The Court feels that an award for general damages, loss of earnings, for past and future disability should be the amount of SIXTY THOUSAND ($60,000.00) DOLLARS." Since the trial judge's written reasons for judgment set out what the award was for, we find no merit to plaintiff's first contention of error.
Plaintiff next alleges error on the part of the trial court in not awarding at least $100,000.00 for his disability, pain and suffering. Plaintiff bases this argument for an increase in the general damage award on LeBlanc v. Roy Young, Inc., 308 So.2d 443 (La.App. 3rd Cir. 1975). In that case the plaintiff, a roughneck employed by Pernie Bailey Drilling Company, Inc., was assisting in the "rigging-down" operations in preparation for transporting a drilling rig to another location. Plaintiff received a severe injury to his left knee when the crown section of the derrick shifted and struck his left knee. The injuries sustained by the plaintiff were described in this court's opinion as follows:
"(1) comminuted fracture of the upper portion of the tibia . . . extending into the left knee; . . . (2) fracture of the lower left femur . . . extending into the articular surface of the knee; . . . (3) torn knee ligaments and cartilages; (4) part of knee joint split open."
Taking into consideration the age of the plaintiff, his limited education, his inability to get a job outside of the hard labor market, and the fact that he was permanently disabled so that he would never be able to return to work which required hard labor, this court determined that an increase in the general damage award was required.
In the present case, plaintiff suffered a compound comminuted fracture of the tibia and fibula. Numerous internal fixations to repair the bone damage and multiple skin grafts were required due to the tearing away of much of the skin of plaintiff's right calf. Subsequent to his discharge from the hospital, plaintiff suffered severe chest pains and was rushed to the hospital. A diagnosis of multiple pulmonary emboli was made and surgery was required to save plaintiff's life. Plaintiff was readmitted at a later date with "footdrop," which required further surgery. The only doctor who testified with reference to plaintiff's injuries and their treatment was Dr. Frank Savoy, Jr., of Mamou. His prognosis does not indicate that the injury received by plaintiff would permanently disable him with reference to his work surveying for the Department of Public Works. In addition, the opinion of Dr. William L. Meuleman, who treated plaintiff, was that, as of January 13, 1975, the plaintiff's recovery appeared to be quite good with minimal residual effects. This conclusion was contained in a letter from Dr. Meuleman to plaintiff's attorney, a copy of which was introduced into the record.
In LeBlanc, plaintiff was a 28 year old male employed as a roughneck. His education was limited to finishing the eighth grade. He had worked only on jobs associated with hard labor, and the injuries sustained by him effectively removed him from the job market. In the present case, plaintiff is a 34 year old male with a high school education. He has a job surveying for the Department of Public Works. The *581 record does not indicate that he is permanently disabled. An important factor before this court in the LeBlanc case, which required an increase in the amount of the award, was the loss of future earnings which plaintiff bore as a result of the accident. This factor is not present in the case at bar. We note that in his written reasons for judgment the trial judge stated that plaintiff had referred him to the LeBlanc case. The trial judge concluded that a similar award in this case was not appropriate because the injuries sustained and the loss of earnings incurred in the LeBlanc case were substantially more severe and higher, respectively, than those involved in the present case. We agree with the conclusions of the trial court.
We note in reviewing this allegation of error the guidelines set for appellate review of the amount of damages awarded by the trial court. Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974); Bitoun v. Landry, 302 So.2d 278 (La.1974). We find no abuse of the "much discretion" placed in the trier of fact by LSA-C.C. art. 1934.
Plaintiff alleges error on the part of the trial court in not awarding him $5,000.00 under the "S/T Coverage" provisions of the policy issued to him by State Farm. Exhibit "D-1" is the policy of insurance provided to plaintiff by State Farm. Plaintiff directs the court's attention to the provisions of the declaration sheet attached to the front of the policy and made a part thereof. It provides a block entitled "ITEM 7PERSONS INSUREDCOVERAGES/T," which is filled in with Eugene Fontenot's name as the insured, "S" as the coverage and $5,000.00 as the amount of coverage. The coverage explanations contained on the declaration sheet indicate that "S" coverage is death and dismemberment coverage; "T" coverage is disability coverage. Plaintiff argues that the availability of "S/T Coverage" entitle him to recover $5,000.00. He bases his claim for "T" coverage on the allegation that he was totally disabled for six months following the accident. He bases his claim for "S" coverage on the contention that his lower right leg was almost completely amputated as a result of the accident.
Plaintiff's contention that he is entitled to disability payments under the policy is without merit. Within the area on the declaration sheet described above, the only coverage listed is "S" coverage, which is death and dismemberment coverage. "T" coverage is not listed, and is not available to plaintiff.
Plaintiff's second contention, that he is entitled to dismemberment coverage because of the almost complete amputation of his right leg, is also without merit. The policy makes a clear distinction between dismemberment and fractures. In the present case, plaintiff did not lose his leg through amputation, but in fact received a severe compound fracture of the leg, which included the tearing loose of some of the muscles and ligaments of the leg in the area of the injury. Plaintiff was paid for the fracture of the leg bone under the terms of the "S" coverage. He is entitled to no more coverage under "ITEM 7" of the policy.
Plaintiff next argues that the trial court erred in not permitting the stacking of defendant's two liability policies. The policies issued by State Farm to Guillory were in full force and effect on the date of the accident, one covering a 1964 Chevrolet automobile that was being driven at the time of the accident and the other on a 1970 Chevrolet pickup truck belonging to defendant. This latter vehicle was not involved in the accident. Each policy provides for bodily injury liability coverage in the amount of $10,000.00. Plaintiff argues that the coverage provided by the two policies should be stacked or combined so as to make available a total of $20,000.00 coverage for the injuries he has sustained. State Farm concedes coverage by the policy *582 written for the 1964 Chevrolet automobile being driven at the time of the accident but denies coverage by the policy written for the pickup truck. We agree with the position taken by State Farm.
The terms of the policy on Guillory's 1970 pickup truck are, in pertinent part, as follows:
"COVERAGE ABodily Injury Liability;
. . . To pay on behalf of the insured all sums which the insured shall become legally obligated to pay in damages because of: . . . bodily injury. . . arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile . . .
* * * * * *
"Persons Insured . . .
"(a) with respect to the owned automobile,
"(1) the named insured and any resident of the same household . . .
"(b) with respect to a non-owned automobile,
"(1) the named insured,
"(2) any relative . . .
* * * * * *
Definitions. Under Part I:
"`named insured' means the individual named in Item 1 of the declarations and also includes his spouse . . .
"`relative' means a relative of the named insured who is a resident of the same household;
"`owned automobile' means
"(a) a private passenger, farm or utility automobile described in this policy . . .
* * * * * *
"`non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative . . . ."
The declaration sheet on this policy provides for liability coverage arising out of the use of the 1970 Chevrolet pickup truck. It does not name as an insured automobile the 1964 Chevrolet automobile involved in the accident, so that vehicle is not an "owned automobile" under the terms of the policy for purposes of liability coverage. Nor is the 1964 Chevrolet a "non-owned automobile" under the terms of the policy covering liability arising out of the use of the pickup truck. The 1964 Chevrolet was owned by Guillory, so that it did not qualify as a "non-owned automobile" under the pickup truck policy. Since State Farm's liability arises only out of the ownership, maintenance or use of either an "owned" or "non-owned automobile," as defined in the policy, no liability coverage is provided under the policy covering the pickup truck for an accident involving the use of the 1964 Chevrolet. We find support for the conclusions we reach in Dudley v. State Farm Mutual Automobile Insurance Co., 255 So.2d 462 (La.App. 1st Cir. 1971). In that case the First Circuit was confronted with the same issues as those presented by plaintiff's argument herein. The court denied the combining of liability policies written for defendant for the same reasons as those we state above. We find those reasons persuasive.
Plaintiff next argues that the uninsured motorist coverage provided under the two policies issued to him by State Farm should be available to provide additional coverage for his injuries. He alleges error on the part of the trial court in denying this claimed coverage. The basis for this argument is plaintiff's contention that the effective date of Act 154 of the 1974 Legislature was twenty (20) days following the end of the legislative session. Since one of the two policies carried by plaintiff was still in effect when the Act amending *583 LSA-R.S. 22:1406(D)(2)(b)[1] became law, plaintiff argues that the statutory change in the definition of "uninsured motor vehicle" should apply to the accident which took place on March 4, 1974.
The issue presented by this argument has been ruled on by this court in Doucet v. Insurance Company of North America, 302 So.2d 731 (La.App. 3rd Cir. 1974).[2] This court held that the 1974 amendment to the uninsured motorist statute was not retroactive in its application, so as to apply to an accident which occurred before the 1974 amendment became effective. In the present case the accident occurred on March 4, 1974, prior to the convening of the legislative session. The effective date of the amendment to the uninsured motorist statute came after its passage by the Legislature.
Therefore, the amendment which broadens the term "uninsured motor vehicle" to include an insured vehicle covered by liability insurance in an amount less than the amount of damages suffered by the insured does not apply to the accident which gave rise to this litigation. Since defendant is not an uninsured motorist under the provisions of the statute, as amended in 1972, plaintiff's uninsured motorist coverage is not available.[3]
Plaintiff's final allegation of error is in the court's failure to permit plaintiff to collect legal interest on $8,379.58 from the date of judicial demand, August 14, 1974, until January 28, 1975, the date plaintiff alleges he actually received that amount. Defendant contends that the amount was tendered to plaintiff on December 1, 1974, in the form of a check, which contention plaintiff does not dispute. Plaintiff simply refused to cash the check, arguing that he was entitled to legal interest on the amount past December 1. The trial judge held that plaintiff was entitled to legal interest on that amount from the date of judicial demand until plaintiff received the check. We agree. There was no dispute over the $8,379.58 due under the policy terms providing bodily injury liability coverage in connection with the use of the 1964 Chevrolet automobile involved in the accident. The record reflects that defendant delivered a negotiable instrument, either a check or draft, to plaintiff on December 1, 1974, in payment of that amount not in dispute. Plaintiff accepted the instrument, but did not cash it. Later, when a "Receipt and Partial Release" was signed on January 28, 1975, plaintiff tried to reserve the right to legal interest on the amount past December 1, 1974, by adding to the Release a handwritten reservation of rights to the interest. Plaintiff cannot continue the running of legal interest simply by refusing to cash the check.
Defendant, Mr. Guillory, has answered the appeal in this case arguing that the award should be reduced. In our discussion *584 above of the plaintiff's second allegation of error, we noted the guidelines placed upon the courts of this state in reviewing the amount of damages awarded by the trial court. We stated above that the trial judge did not abuse his "much discretion" in the case at bar. We can no more reduce the award in this case than increase it in the absence of a finding of abuse of discretion. Bitoun v. Landry, supra.
For the reasons assigned, the judgment of the trial court is affirmed at plaintiffappellant's costs.
Affirmed.
NOTES
[1] LSA-R.S. 22:1406(D)(2)(b), as amended in 1972, provided as follows:

"For the purpose of this coverage the term uninsured motor vehicle shall, subject to the terms and conditions of such coverage, also be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the uninsured motorist coverage carried by an insured."
As amended in 1974, the statute provides as follows:
"For the purposes of this coverage the term uninsured motor vehicle shall, subject to the terms and conditions of such coverage, also be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by an insured and/or the passengers in the insured's vehicle at the time of an accident, as agreed to by the parties and their insurers or as determined by final adjudication."
[2] Writ denied, La., 305 So.2d 134.
[3] Guillory was not driving an "uninsured motor vehicle" as defined under LSA-R.S. 22:1406(D)(2)(b), as amended in 1972, because the automobile liability insurance coverage on Guillory's vehicle was not less than the uninsured motorist coverage carried by plaintiff.