WATKINS, Judge.
The primary issue in this appeal is whether the driver of a delivery van was the employee of the company that hired her, or of the company whose logo she was wearing and whose deliveries she was making at the time her van collided with the automobile in which the plaintiff was a passenger, or of both companies.
The Accident
On September 26, 1991, plaintiff Roger Dale Arnold was a passenger in an automobile driven by Aarence Price when it collided with a van being driven by Beth Boudreaux, who had been hired by AAA Delivery Services, Inc. (AAA). The Price vehicle was westbound on Belanger Street in Houma, Louisiana; Ms. Boudreaux was driving a van southbound on a private driveway that intersects with Belanger Street. As the Price vehicle proceeded down Belanger Street in front of the driveway, Ms. Boudreaux drove the van onto the street and collided broadside with the passenger side of the Price vehicle.
Although the facts were somewhat disputed, apparently the parties to the accident agreed to handle the matter among themselves and not to summon the police.[3] At the time of the accident, an Airborne logo was on the van Ms. Boudreaux was driving and on her uniform. Ms. Boudreaux testified that she left the scene of the accident and continued with her delivery route. She also testified that she later reported the accident, describing it as minor, to her supervisor at AAA, but she did not report it to Airborne because, in her opinion, the accident did not concern Airborne.
Mr. Price testified that at the time of the accident, he considered it to be minor; however, after he drove away from the scene, he *1065 realized there was more damage to his vehicle than the visible dent left by the impact. According to Mr. Price, the |3collision also caused structural damage to his vehicle, causing it to vibrate and the tires to wear out, and he ultimately had to sell the vehicle. He testified that he telephoned his own insurance company when he got home and was advised to call the police and file an accident report, which he did.
The plaintiff, Mr. Arnold, testified that although he was wearing a seat belt, he was thrown across the seat by the force of the impact. He did not realize that he had sustained serious injuries until later when he was at home and began to feel soreness from the accident.
Procedural History
Mr. Arnold originally filed suit against Ms. Boudreaux, alleging negligence, and against both AAA and Airborne, alleging vicarious liability for the torts of their employee. Airborne answered the suit and asserted a third party demand against Mr. Price and Ms. Boudreaux, alleging negligence in causing the accident; against AAA for indemnity and contribution pursuant to a “Cartage Agreement” between AAA and Airborne; and against Comeo Insurance Company, AAA’s liability insurer, alleging that Airborne was an additional named insured under that policy. Plaintiff subsequently filed an amending and supplemental petition which added as defendants to the principal demand Comeo Insurance Company, AAA’s liability insurer, and American Manufacturer’s Mutual Insurance Company, Airborne’s liability insurer. Subsequently, Comeo’s insolvency led to liquidation and LIGA assumed Comco’s position in this matter as AAA’s insurer. LIGA then filed a third party demand against Airborne and American Manufacturer’s Mutual, also asserting that Ms. Boudreaux was Airborne’s borrowed employee and, therefore, Airborne and its insurer were solidarily and vicariously liable for the damage caused by her negligence.
Action of the Trial Court
Prior to trial, the parties stipulated that the factual issues would be submitted to the jury and the issues regarding insurance coverage were reserved for the trial judge. After a four day Utrial, the jury determined that Ms. Boudreaux was 85% at fault and Mr. Price was 15% at fault in causing the accident. The jury also concluded that Ms. Bou-dreaux was an employee of AAA, but that she was not an employee of Airborne. The jury found that Mr. Arnold was injured as a result of the accident and awarded a total of $150,000.00 in damages. Finally, the trial judge dismissed, with prejudice, the plaintiffs main claim, as well as the third party demands of AAA, Ms. Boudreaux, and LIGA, against Airborne. The trial court also dismissed, with prejudice, Airborne’s third party demands against LIGA, AAA, Ms. Bou-dreaux, and Mr. Price. Also dismissed were all claims against American Manufacturers Mutual Insurance Company.
A judgment was rendered against LIGA, AAA, and Ms. Boudreaux, in solido, for the amount of damages awarded; AAA and Ms. Boudreaux were ordered to pay legal interest from the date of judicial demand, and LIGA from the date of Comco’s insolvency (January 13, 1992) until paid. The judgment also assessed jury costs, in the amount of $3,565.71, to Airborne.
The Appeal
Plaintiff appeals the judgment on three issues: quantum, alleging it was insufficient; the liability of American Manufacturers Mutual Insurance Company, claiming that the van, because it was being used in Airborne’s business, was a “covered auto” under that policy; and the vicarious liability of Airborne, claiming that Ms. Boudreaux was Airborne’s borrowed employee. LIGA appeals the judgment contending it should not be responsible for post-insolvency legal interest and that it should not be responsible for an award over the statutory limit of $150,000.00 less the $100.00 deductible. Finally, Airborne appeals the judgment on three issues: the dismissal of its third party demand for attorney’s fees against LIGA, alleging that LIGA breached its contractual duty to defend Airborne; the dismissal of its third party demand for attorney’s fees against AAA, claiming that AAA violated the Cartage Agreement; and the assessment of jury costs to IsAirborne, claiming that this assess *1066 ment was unjustified in light of Airborne’s prevailing position.
After a thorough and careful review of this record, we find that the jury’s conclusion that Ms. Boudreaux was not an employee of Airborne is not manifestly erroneous in light of the applicable law and the evidence presented. We note that the jury was instructed on the contrast between an employee and an independent contractor, not on the characteristics of a borrowed servant and a shared servant. However, because none of the parties has urged error in the trial court’s charges to the jury, we cannot consider whether the charges were in error.
Employee Status
It is well settled that a master, or employer, is hable for the tortious conduct of a servant or employee. LSA-C.C. art. 2320; Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968). The right of the employer to control the work being done is the linchpin of the employer-employee relationship. Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972). The legal relationship between AAA and Airborne is relevant to a determination of whether the employer/employee relationship existed between Airborne and Ms. Boudreaux. The legal relationship between AAA and Airborne is to be determined from the contract between them, as well as from its performance and the surrounding circumstances. Hickman, 262 So.2d at 390.
The Cartage Agreement
Airborne and AAA entered into a Cartage Agreement, drawn up by Airborne officials, to govern their business relationship. Airborne Freight Corporation, d/b/a Airborne Express, is an international air express company and an air freight forwarder that specializes in over-night package delivery for companies worldwide. AAA Delivery Services, Inc. is a Louisiana corporation with the principal business of package delivery on land with the use of its own vans and trucks. Pursuant to the Cartage Agreement, AAA provided transportation, delivery, and pickup services for Airborne in South Louisiana and Mississippi. The testimony |firevealed that approximately 90-95% of AAA’s business was delivering packages for Airborne.
The express terms of the Cartage Agreement confer on AAA the sole discretion and control over the manner and means of performance. However, a review of the record reveals there was testimony that Airborne retained control over AAA’s manner and means of performance, despite the seemingly contrary terms of the contract. “Mickey” Shields, president of AAA, testified that despite the language in the agreement, AAA was not allowed to enter its vans into Airborne’s facility unless such vans were painted in Airborne colors and decaled with the Airborne logo and 1-800 telephone number for Airborne. Mr. Shields testified that AAA owned approximately 40 vehicles it used to deliver packages within the Airborne system, and these vehicles were painted with Airborne colors and logos. The rates for delivery were set by Airborne, and AAA was then paid a fixed price per package delivered. Airborne set delivery schedules and AAA was penalized if these were not followed. Additionally, evidence was presented of written directives sent by Airborne to AAA ordering AAA employees to abide by time schedules for deliveries, in particular with regard to large accounts, such as IBM and Xerox. Furthermore, AAA was furnished with training manuals and films from Airborne with which to train its employees. However, all of these facts relate to Airborne’s “control” of AAA, not to Airborne’s control of Ms. Boudreaux.
More specifically, Mr. Shields testified that Airborne required all AAA employees to wear the Airborne uniform, and to use Airborne bills of lading and lot labels, delivery tickets and routing forms when performing deliveries. AAA employees worked side by side with Airborne employees on a daily basis, and the operations supervisor over the entire operation was an Airborne employee.
In February, 1990, Ms. Boudreaux answered an advertisement that had been placed in the Houma Courier by AAA for a small package courier. She interviewed for the position at the AAA 17facility in Harahan, Louisiana, and she was subsequently hired by AAA and assigned to the Houma, Louisi *1067 ana, area. She was trained by AAA employees and was provided with a van from which to make her pick-ups and deliveries.
The proper question posed by the facts of the instant case is whether Ms. Boudreaux was a servant of AAA borrowed by Airborne or a shared servant of the two companies, not whether AAA was an independent contractor vis a vis Airborne. Because Ms. Boudreaux was hired by AAA, she would be AAA’s employee but for another relationship she might have with Airborne. If AAA relinquished all control of Ms. Boudreaux to Airborne, then she became the borrowed servant of Airborne and AAA would not be liable for her tort. However, if AAA and Airborne became “general employer” and “special employer” to Ms. Boudreaux, then AAA, Airborne, and Ms. Boudreaux are solidarity liable for Ms. Boudreaux’s tort. See State Farm Mutual Automobile Ins. Co. v. LeBlanc, 460 So.2d 673 (La.App. 1st Cir.1984), unit denied, 462 So.2d 653 (La.1985).
We find that there is sufficient conflicting evidence in the record to bar a decision on our part that the jury was manifestly erroneous in finding that Ms. Boudreaux was not an Airborne employee. Our analysis of the facts in light of the Cartage Agreement convinces us that the result reached by the jury is correct. There is long-standing authority for affirming the judgment in this cartage case. The Louisiana Supreme Court in Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137, 142 (1951), quoted from an early opinion of Justice Holmes, as follows:
In cases like the present, there is a general consensus of authority that, although a driver may be ordered by those who have dealt with his master to go to this place or that, to take this or that burden, to hurry or to take his time, nevertheless in respect to the manner of his driving and the control of his horse he remains subject to no orders but those of the man who pays him. Therefore he can make no one else liable if he negligently runs a person down in the street.
See also Leblanc v. Roy Young, Inc., 308 So.2d 443 (La.App. 3d Cir.), unit denied, 313 So.2d 240 (La.1975); Billeaud v. Poledore, 603 So.2d 754 (La.App. 1st Cir.), unit denied, 608 So.2d 176 (La.1992).
IsCoverage Under American Manufacturers Mutual Insurance Policy
The arguments on appeal that the trial judge erred in dismissing all third party demands against American Manufacturers Mutual Insurance Company, Airborne’s liability insurer, are based on the previously discussed argument that Airborne was liable for Ms. Boudreaux’s tort. Having reached the decision that the jury’s verdict regarding Airborne’s liability was not manifestly erroneous, we need not consider anew the demands against American Mutual.
Airborne’s Claim of Indemnity for Attorney’s Fees
The trial court also dismissed Airborne’s claim against AAA for indemnity. Based on the indemnity provision of the Cartage Agreement, Airborne sought indemnity for attorney’s fees in the amount of $70,954.10. Airborne appeals the dismissal. Airborne also claims that the trial court erred in dismissing its third party demand against LIGA, for defense and attorney’s fees. Airborne claims that as a named insured in the Comeo policy, it was entitled to defense and costs from Comeo, and from LIGA since LIGA stepped into the shoes of Comeo.
Although Airborne asserts a claim for indemnification of attorney’s fees in the amount of $70,954.10 against both AAA and LIGA, the record reveals that Airborne did not incur these costs; the invoice for fees filed in the record was not to Airborne, but to an Airborne insurer that is not a party to this action. Therefore, Airborne did not pay attorney’s fees and has no claim for indemnification. Also see LSA-R.S. 22:1386 A and D. and LSA-R.S. 22:1379(3)(d).[4]
Jury Costs
Citing LSA-C.C.P. art. 1920, Airborne additionally claims that the trial court’s assessment of jury costs against it was manifest *1068 error, because Airborne was exonerated from liability in this matter.
LSA-C.C.P. art. 1920 provides that costs shall be paid by the party cast and that the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. However, the imposition of jury costs upon a prevailing party solely because that party requested the jury was rejected by this court in Mack v. Southern Farm Bureau Cas. Ins. Co., 447 So.2d 32 (La.App. 1st Cir.), unit denied, 449 So.2d 1346 (La.1984). Therefore, we reverse that portion of the judgment assessing the jury costs to Airborne.
Comparative Negligence of Aarence Price
Mr. Arnold argues on appeal that the trial court erred in assessing 15% fault in causing the accident to Aarence Price. Although the Price vehicle had the right of way, and the Boudreaux vehicle was exiting a private driveway, Mr. Price was nevertheless obligated to keep a proper lookout and heed the speed limit. There was some discrepancy in the testimony regarding the speed of the Price vehicle at the time of the collision. Although Mr. Price and Mr. Arnold testified that Mr. Price had been driving 15 to 20 m.p.h. on a street where the posted speed limit was 25 m.p.h., the investigating police officer testified that Mr. Price had told him he was travelling 30 m.p.h. prior to the collision. This minor discrepancy regarding Mr. Price’s speed is sufficient basis for the jury’s determination that Mr. Price was 15% at fault in causing the accident. The jury was not clearly wrong in assessing fault, and we affirm this decision.
Quantum
Mr. Arnold appeals the jury’s quantum award, alleging it is insufficient in several particulars. We find it unnecessary to address each item of damage separately because our review of the record reveals a sufficient basis for the jury’s decision to award less than the total amount sought. The evidence reveals that Mr. Arnold suffered from a number of degenerative disc changes and “chronic low back pain.” Dr. Christopher Cenac, Mr. Arnold’s treating physician, testified that these findings are consistent with the aging process and Mr. Arnold’s work history as a physical | ^laborer and were not necessarily trauma related. Furthermore, Mr. Arnold suffered a preexisting injury which resulted in ulnar nerve problems; therefore, the jury could have concluded that Mr. Arnold’s carpal tunnel syndrome problem was not causally related to this accident. Finally, the plaintiff denied having previously filed suit for damages for a prior accident, which testimony was directly contradicted by the admission into evidence of a 1987 petition in which plaintiff sought $800,000.00 in damages. This less than truthful testimony certainly was weighed by the jury in making credibility determinations related to plaintiff’s claim of injury and damage; to these determinations, we give great deference. See Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Reck v. Stevens, 373 So.2d 498 (La.1979); Youn v. Maritime Overseas Corporation, 623 So.2d 1257 (La.1993), cert. denied, 93-933 (2/22/94); — U.S. -, 114 S.Ct. 1059, 127 L.Ed.2d 379. After our review of the record, we conclude that the jury did not abuse its great discretion in determining the proper amount of damages. Accordingly, the award is affirmed.
LIGA’s Appeal
Finally, LIGA, which was substituted in this litigation in Comco’s stead after Comeo was placed in liquidation, appeals two aspects of the lower court judgment: the imposition of post-insolvency legal interest against LIGA, and the trial court’s failure to limit LIGA’s liability in this matter to the statutory cap of $150,000.00 per claim, minus the statutory deductible of $100.00.
The trial court judgment renders LIGA liable for legal interest on the amount awarded from January 13, 1992, the date of Com-co’s insolvency, until paid. The statute cited by LIGA in support of its argument that the trial court erred, LSA-R.S. 22:1379(3)(d), excludes from the definition of a covered claim court costs and interest which occurred before insolvency; it does not exclude post-insolvency obligations. Therefore, we find no merit in LIGA’s argument. See Rochet v. Terrebonne Parish School Board 93-0383 *1069 (La.App. 1st Cir. 5/20/94) 637 So.2d 753, 758, writ denied, 94-1613 (La. 10/7/94); 644 So.2d 633.
Nor do we find merit in LIGA’s claim that the trial court erred in assessing any amounts against it in excess of the $150,-000.00 statutory limit. LIGA’s statutory limit of $150,000.00 (less the $100.00 deductible) applies to the principal amount of the claim; an award of interest and costs in excess of this amount is allowable. See Robichaux v. Randolph, 555 So.2d 581 (La.App. 1st Cir.1989), writ denied, 559 So.2d 127 (La.1990), affirmed on other grounds, 563 So.2d 226 (La.1990), as modified by Gautro v. Fidelity Fire and Cas. Ins. Co., 623 So.2d 106 (La.App. 1st Cir.1993).
For all of the foregoing reasons, the judgment of the trial court is reversed in part and affirmed in part. Costs of this appeal are assessed equally to plaintiff and LIGA.
AFFIRMED IN PART; REVERSED IN PART.

. Mr. Price and Mr. Arnold both testified that Ms. Boudreaux exited the van crying, fearing that the accident might negatively impact her job. According to both men, she offered to pay for the damage to Price’s vehicle with her own money if they would agree not to call the police. According to Ms. Boudreaux, the parties simply agreed that there was no need to summon the police because the damage to the vehicles was so minor and there were no injuries.

. Although Airborne may have been entitled to a defense from Comeo pursuant to the Cartage Agreement with AAA, LIGA does not share this obligation under these statutory provisions.