|,YELVERTON, Judge.
The issue in this case is whether a Progressive Insurance Company motor vehicle policy provided coverage for the vicarious liability of parents for the negligence of their unemancipated minor child.
On May 23, 1997, Justin Henderson, a 16 year old living with his parents, James and Nadra Henderson, rear-ended Dr. Joni Orazio’s Suburban. Plaintiffs, Dr. Joni Orazio and Dr. Charles Bramlet, wife and husband, individually and on behalf of their minor children in the Suburban, filed suit for damages. They sued James and Nadra Henderson based on their parental responsibility for their minor child, Justin, and Progressive Insurance Company, their liability insurer, for damages caused by the rear-end collision.
Justin was driving a 1989 Ford pickup truck owned by his mother. Liability insurance for the truck was provided by Progressive Insurance Company under a policy with bodily injury limits of $50,000 per person, $100,000 per accident, and $25,000 for property damage. Justin, James, and Nadra Henderson were listed on the declarations page of that policy as drivers of the Ford pickup. That policy covered the elder Hendersons’ liability for young Justin’s negligence. Coverage under that policy is admitted.
What is at issue in this case is another policy. The elder Hendersons had another Progressive Insurance Company Policy, # 00836383-0 (herein Policy # 383-0), that covered their 1998 Mercedes and a 1994 Mitsubishi. These were the two vehicles listed on the Declarations Page of this policy. This policy listed James and Na-dra Henderson as drivers and provided liability coverage up to $100,000 per person, $300,000 per accident, and $50,000 for property damage. In their pleadings |2the Plaintiffs alleged that this Policy # 383-0, which had the bodily injury limits of $100,000 and $300,000, provided additional coverage because of the language of the policy and the vicarious liability of James and Nadra Henderson for the negligence of their unemancipated minor child, Justin.
Pursuant to cross-motions for summary judgment, the trial court found that there was coverage under both policies. It is from this ruling that Progressive appeals. They dispute the coverage of Policy # 383-0.
Summary judgment procedure is an appropriate vehicle for resolving this controversy. Appellate courts review summary judgments de novo, applying the same criteria used by the trial courts in deciding whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991). The matter is now before us for de novo consideration.
The precise issue is whether Policy # 383-0 which covered the Hendersons’ Mercedes and Mitsubishi vehicles also covered their vicarious liability as to Justin’s negligence arising out of the use of Nadra Henderson’s Ford pickup. Resolution of this issue requires an examination of the insurance contract.
“An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles.” Ledbetter v. Concord General Corp., 95-809, p. 3 (La.1/6/96); 665 So.2d 1166, 1169, amended on other grounds, 95-809 (La.4/18/96); 671 So.2d 915. The contract has the effect of law for the parties. La.Civ.Code art. 1983. Interpretation of the contract is the determination of the common intent of the parties. La.Civ. Code art. 2045.
*756 Words in an insurance contract are to be .given their generally prevailing and ordinary meaning, unless they have acquired a technical meaning. Courts lack the authority to alter the terms of insurance |acontracts under the guise of contractual interpretation when the policy’s provisions are couched in unambiguous terms. An insurance contract is construed as a whole and each provision in the policy must be interpreted in light of the other provisions so that each is given meaning. One portion of the policy should not be construed separately at the expense of disregarding other provisions. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. That is, the rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties’ intent. If, after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who furnished the policy’s text and in favor of the insured finding coverage. When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate.
Peterson v. Schimek, 98-1712, p. 5 (La.3/2/99); 729 So.2d 1024, 1028-29 (citations omitted).
Guided by these principles, we will now review Policy # 383-0. The areas of the contract that Plaintiffs contend create coverage, or are at least ambiguous, are the Declarations Page, the Insuring Agreement in Part I, and the definitions, both the General Definitions and also those pertaining particularly to Part I. We will discuss the following pertinent provisions in the order in which they appear in the policy.
First, there is the Declarations Page. It names James Henderson as the person to whom the personal auto policy was issued. Two cars, a 1998 Mercedes and a 1994 Mitsubishi, are listed and described; the applicable coverage is recited; the names James and Nadra are shown as drivers; and the amount of the premiums for each of the two vehicles is set forth.
|4Next is the section labeled “GENERAL DEFINITIONS.” It defines the phrase “covered vehicle” to mean “any vehicle shown on the Declarations Page.” It defines a “non-owned vehicle” as any vehicle that is not owned by the named insured, a relative, or the spouse of the named insured. It defines the single words “owned,” “owner,” “relative,” and “vehicle.” Applying these definitions, both the Mercedes and the Mitsubishi listed on the Declarations Page were vehicles owned by the elder Hendersons and were covered vehicles, and Justin was a relative. Although the Ford pickup was an owned vehicle, it was not shown on the Declarations Page and therefore was not a covered vehicle as defined in Policy # 383-0.
The Insuring Agreement is next. It reads:
PART I — LIABILITY TO OTHERS INSURING AGREEMENT-BODILY INJURY
Subject to the Limits of Liability, if you pay a premium for bodily injury liability coverage, we will pay damages, other than punitive or exemplary damages, for *757 bodily injury for which an insured person becomes legally responsible because of an accident arising out of the ownership, maintenance, or use of a vehicle.
Plaintiffs believe that the Insuring Agreement provides coverage for the Hendersons’ vicarious liability for the accident arising out of the use of the Ford pickup because they are insured persons “legally responsible” because of an accident arising out of the use of “a vehicle.” They start their argument for this with the premise that the Hendersons’ legal responsibility arises under Louisiana Civil Code Article 2318 which makes parents responsible for the damage occasioned by their minor or unemancipated children living with them. The Plaintiffs then maintain that Progressive did not intend to limit its vicarious liability coverage to accidents arising |sout of the use of the vehicles named on the Declarations Page of Policy #383-0, for had it so intended it would have chosen the article “the” instead of the article “a” to refer to “vehicle” in its Insuring Agreement, or better yet it would have used the language “a covered vehicle.”
We cannot agree with this interpretation. This argument disregards other words and phrases in the Insuring Agreement. The Insuring Agreement consists of one sentence. Giving effect to each element of the sentence, the meaning of the sentence is clear. The main clause of the sentence is “we will pay damages.” All the words that follow the word “damages” make up restrictive phrases and a subordinate clause that modify “damages.” First, these words limit the meaning of damages to exclude punitive or exemplary damages. Then they limit damages to bodily injury. The limitation to bodily injury damages is then itself further limited by the adjective clause “for which an insured person becomes legally responsible.” The prepositional phrase “because of an accident” limits legal responsibility. Further, the accident must arise out of the ownership, maintenance, or use of a vehicle. “Bodily injury,” “insured person,” “accident,” and “vehicle” are all boldfaced in the Insuring Agreement, and they are defined in the definitions sections. Our present dispute focuses on the meanings of “insured person” and “vehicle.”
The phrase “insured person” and the word “vehicle” are technical terms. As pointed out earlier, “vehicle” is defined in the policy under “GENERAL DEFINITIONS.” The purpose of defining vehicle is obviously to limit coverage to a particular type of transportation, and thereby exclude other types such as a bicycle. The Mercedes, the Mitsubishi, and the Ford pickup are all vehicles under the definition. Also, as pointed out above, coverage is limited to the liability of an | fiinsured person. The definition of “insured person” or “insured persons” in the policy encompasses six situations, or combinations of circumstances. For the elder Hendersons to be insured persons for their parental liability because of an accident arising out of the ownership, maintenance, or use by Justin of the Ford pickup, the facts must fit into one of these six situations. Unless they fit into one of these six situations, neither of them is an insured person and there is no coverage under the policy.
Our last quote from the policy deals with the meaning of “insured person” as an element of the insuring agreement and as defined in the policy. The quote appears under “ADDITIONAL DEFINITION,” and reads as follows:
When used in this Part I, “insured person” or “insured persons” means:
1. you or a relative with respect to an accident arising out of the ownership, maintenance, or use of a covered vehicle;
*758 2. any person with respect to an accident arising out of that person’s use of a covered vehicle with the express or implied permission of you or a relative;
3. a relative with respect to an accident arising out of the maintenance or use of a non-owned vehicle with the express or implied permission of the owner of the vehicle;
4. you with respect to an accident arising out of the maintenance or use of any vehicle with the express or implied permission of the owner of the vehicle;
5. any person or organization with respect only to vicarious liability for an accident arising out of the use of a covered vehicle or non-owned vehicle by a person described in 1, 2, 3, or 4 above; and
6. any Additional Interest Insured designated by you in your application or by a change request agreed to by us, with respect to liability for an accident arising out of the use of a covered vehicle or non-owned vehicle by a person described in 1, 2, 3, or 4 above.
An examination of each of these six situations, or combinations of circumstances, shows that no Henderson is an insured person in this case in this |7policy. The following explanations address the six situations and show why the Hendersons are not insured persons under any of the listed combinations of circumstances. We have numbered each paragraph of our explanation to correlate with the “ADDITIONAL DEFINITION” quoted above.
1. The accident did not arise out of the ownership, maintenance, or use of a covered vehicle (the Mercedes or the Mitsubishi) by the Hendersons or their son.
2. The accident did not arise out of the use of the Mercedes or the Mitsubishi by any person.
3. The accident did not arise out of the maintenance or use of a non-owned vehicle by Justin Henderson (the Ford pickup was an owned vehicle).
4. The accident did not arise out of the maintenance or use of the Ford pickup by the elder Hendersons. The word “You” is defined under “GENERAL DEFINITIONS” to mean “the person shown as the named insured on the Declarations Page, and that person’s spouse if residing in the same household.” Thus, this situation 4 means only that with respect to an accident arising out of the maintenance or use of any vehicle by James or Nadra Henderson with the express or implied permission of the owner of that vehicle, will the Hendersons be insured persons.
5. The accident did not arise out of the use of a covered vehicle or non-owned vehicle by anyone, including the three Hendersons, therefore no person is insured with respect to vicarious liability in this case.
6. There are no Additional Interest Insureds designated in the policy.
The Plaintiffs cite Eason v. Financial Indem. Co., 98-381 (La.App. 3 Cir. 10/28/98); 721 So.2d 528. They argue that the insuring agreement of the “operators” | sPolicy in that case was construed to cover a parent’s vicarious liability for the negligence of her minor child because it agreed to pay damages for which any insured became legally responsible because of an auto accident. Eason is distinguishable from our present facts. It arose out of a different contract. It was a non-owners policy. The owner did not own a car at the time the policy was purchased. The contract did not cover any specific motor vehicle. The policy in the present case was not an operator’s policy and was purchased to cover specific motor vehicles.
More in point is the situation involved in Fontenot v. Guillory, 327 So.2d 578 (La. *759 App. 3 Cir.), writ denied, 330 So.2d 314 (La.1976). In Fontenot, Guillory was insured against liability under two policies issued by the same insurer. One policy covered his car, and the other covered his pickup truck. His minor son had an accident while using the car. The injured plaintiff sought coverage under both policies. We held that coverage was not available under the pickup truck policy. The declaration sheet provided for liability coverage arising out of the use of the pickup truck, but did not name as an insured vehicle the car that was involved in the accident as an “owned automobile.” Nor was the car a “non-owned automobile” under the pickup truck policy. Because the insurer’s liability did not arise out of the ownership, maintenance, or use of either an “owned” or “non-owned” automobile, as defined in the policy, no liability coverage was provided under the policy covering the pickup truck for an accident arising out of the use of the car. By similar reasoning applying the “covered vehicle” definitions and provisions, we find that Policy # 383-0 does not provide liability coverage for this accident arising out of the use of the pickup truck.
The policy is not ambiguous. It is clear, and it does not provide coverage for this accident.
| nBased on the foregoing, the judgment of the trial court, to the extent that it found coverage under Policy #383-0, is reversed. Summary Judgment is rendered in favor of Progressive Insurance Company declaring that Policy # 00836383-0 does not provide coverage for this accident. Plaintiffs will pay all costs.
REVERSED AND RENDERED.