PICKETT, Judge.
| ¶ Opelousas General Hospital Authority (Opelousas General) appeals a judgment of the trial court holding that a claim for “negligent credentialing’’ of a physician by a hospital does not constitute medical malpractice subject to the terms of the Louisiana Medical Malpractice Act (MMA), La. R.S. 40:1231.1, et seq.
FACTS
On June 20, 2010, Brandi Billeaudeau was taken to Opelousas General after collapsing in her parents’ home. Brandi is a thirty-five-year-old woman with Down syndrome. Veronica Billeaudeau, Brandi’s *563 mother and a nurse, and her husband Joseph transported their daughter to the hospital, where she was diagnosed by the emergency room (ER) physician, Dr. Kon-dilo Skirlis-Zavala, with focal motor seizure. Dr. Skirlis-Zavala ordered the administration of anti-seizure medication and a CT scan, which was reported as normal.
The Billeaudeaus disagreed., with the doctor’s diagnosis and .thought their daughter had suffered a stroke. They asked that their daughter be given tPA (t-plasminogen activator), a treatment for stroke victims. However, according to the allegations of the Billeaudeaus, they were informed that their daughter was not a candidate for tPA. The Billeaudeaus requested that Brandi be transferred to Our Lady of Lourdes (OLOL) in Lafayette. Dr. Skirlis-Zavala arranged for Brandi to be transferred to OLOL, where she was given tPA four hours after she suffered what was ultimately determined to be a stroke.
Veronica Billeaudeau, individually and as curatrix of Brandi, and Joseph Billeau-deau pursued a claim under the MMA and brought suit in general negligence against Opelousas General, among other 'defendants. They filed a motion for partial sumr mary judgment asking that the trial court declare that their ^demands against Opel-ousas General for negligent credentialing were not subject to the terms of the MMA, including the cap on damages found in La.R.S. 40:1231.2(B)(1). The trial court granted this motion.
Opelousas General sought a writ of supervisory review from this court, which was denied. Billeaudeau v. Opelousas Gen. Hosp. Auth., 15-821 (La.App. 3 Cir. 9/28/15) (unpublished). One member of the panel dissented and would have granted the writ application. Opelousas General then sought a writ of certiorari from the Louisiana Supreme Court, which was also denied. Billeaudeau v. Skirlis-Zavala, 15-1948 (La.11/30/15), 182 So.3d 43. In the meantime, the trial court certified its grant of partial summary judgment as a final judgment. Opelousas General has now filed this appeal.
ASSIGNMENTS OF ERROR
On appeal, Opelousas, General asserts three assignments of error (footnotes omitted):
1. Contrary to the holding in Plaisance v. Our Lady of Lourdes Regional Medical Center, Inc., [10-348 (La.App. 3 Cir. 10/6/10), 47 So.3d 17, writ denied, 10-2520 (La.1/14/11), 52 So.3d 904] the district court erred in its legal conclusion that a “negligent credentialing” claim coupled with a negligent supervision claim against a hospital, qualified as a health care provider, did not constitute an act of “malpractice” under Louisiana’s Medical Malpractice Act (“LMMA”), La.R.S. 40:1231.1(A)(13).
2. The trial court’s error was induced by disregarding its own analysis of the negligent credentialing claim under the Coleman v. Deno [, 01-1517 (La.1/25/02), 813 So.2d 303,] factors that producéd á contrary conclusion.
3. The trial court’s error , was compounded by employing an expression unius est exclusion alterius statutory analysis that misapprehends the rule of strict construction and leads to an absurd conclusion the Legislature must have intended to exclude “negligent ere-.dentialing” claims- from the -LMMA’s definition of “malpractice” .coverage when it amended that definition in 2001 to include “all legal responsibility of a health care provider arising from acts or |.emissions-'... in-the training .or supervision of health care providers.” .
*564 ANALYSIS
This court has already ruled on this exact issue in an application for supervisory writs. Thus, the discretionary “law of the case” doctrine is clearly applicable.
This doctrine provides that “an appellate court will not reconsider its own rulings of law in the same case.” Lejano v. Bandak, 97-388, p. 23 (La.12/12/97), 705 So.2d 158, 170, cert. denied, 525 U.S. 815, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998). This doctrine, however, is purely discretionary and will not apply “in eases of palpable error or when, if the law of the case were applied, manifest injustice would occur.’ ” Id.
Shallow v. Gulf Coast Soc. Servs., 15-91, p. 7 (La.App. 3 Cir. 6/10/15), 166 So.3d 1239, 1245-46, writs denied, 15-1336, 15-1355 (La.10/9/15), 178 So.3d 1002, 1003. We will review the ruling of this court to determine if there is palpable error.
We review summary judgments de novo, applying the same criteria the trial court considered in determining whether summary judgment was appropriate. Gray v. Am. Nat’l Prop. & Cas. Co., 07-1670 (La.2/26/08), 977 So.2d 839.
Every medical malpractice claim asserted against a health care provider that is properly qualified must be pursued subject to the terms of the MMA. La.R.S. 40:1231.8(A)(l)(a); La.R.S; 40:1231.2(B). The MMA defines malpractice as:
[A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal ■ responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.
La.R.S. 40:1231.1(A)(13). Whether certain acts or omissions constitute “malpractice” under the MMA’s definition has been extensively litigated. The supreme court has provided the analytical framework within which such an analysis is to take place. In Coleman v. Deno, 01-1517, 01-1519, 01-1521, pp. 17-18 (La.1/25/02), 813 So.2d 303, 315-16, the supreme court enunciated the test (citations and footnote omitted):
In determining whether certain conduct by a qualified health care provider constitutes “malpractice” as defined under the MMA this court has utilized the following three factors:
“[1] whether the particular wrong is ‘treatment related’ or caused by a dereliction of professional skill,”
[2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, and
“[3] whether the pertinent act or omission involved assessment of the patient’s condition.”
The latter annotation lists three additional factors that courts have considered, and we now add those to our Sewell [v. Doctors Hosp., 600 So.2d 577 (La.1992) ] list; to wit:
[4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
[5] whether the injury would have occurred if the patient had not sought treatment, and
*565 [6] whether the tort alleged was intentional.
The Billeaudeaus contend that negligent credentialing is not subject to the terms and limitations of the MMA. They allege that Opelousas General’s déeision to grant credentials to Dr. Skirlis-Zavala is an administrative decision, not a medical decision. They claim Opelousas General negligently allowed Dr. Skirlis-Zavala to have privileges in its emergency department because she .lacked the ^experience and training required by Opelousas General’s own by-laws governing the granting of privileges. They also allege that Opelou-sas General failed to follow-up on a “qualified” reference given by an emergency medicine physician at the. time Dr. Skirlis-Zavala was granted privileges. Finally, the Billeaudeaus argue that Opelousas General failed to investigate two malpractice claims .filed against Dr. Skirlis-Zavala before she sought privileges at the hospital. ,
Before analyzing this case in light of the Coleman factors, we note the difficulty of applying these factors to a claim for negligent credentialing, which is not purely a medical decision. The first Coleman factor is whether the particular wrong is treatment related. The Billeaudeaus focus on Dr. Skirlis-Zavala’s relative inexperience in emergency medicine and stroke diagnosis in particular. They also point out that Dr. Skirlis-Zavala attended medical school in Mexico, and that she had two malpractice claims filed against her at the time she applied for privileges at Opelou-sas General.
In Plaisance v. Our Lady of Lourdes Regional Medical Center, Inc., 10-348 (La.App. 3 Cir. 10/6/10), 47 So.3d 17, writ denied, 10-2520 (La.1/14/11), 52 So.3d 904, this court engaged in an exhaustive examination of each of the Coleman factors to determine whether a claim for “negligent credentialing”' constituted a malpractice claim. In Plaisance, the plaintiff claimed the hospital was negligent in originally credentialing a physician and allowing him to retain his credentials in light of multiple allegedly unsatisfactory medical procedures performed on the plaintiff. In that case, we found the particular wrong was treatment related because it required the court to review the treatment that physician provided to that plaintiff, and the hospital’s decisions in light of the plaintiffs allegations of substandard care.
[RThis case is. distinguishable from Plai-sance in that it does not require the court to review the treatment of Brandi in determining whether-Opelousas General acted negligently in hiring Dr. Skirlis-Zavala. We find the first Coleman factor weighs against treating the claim of negligent credentialing as medical malpractice.
The second factor determines whether the wrong requires expert testimony to determine whether there was a breach of the standard of care. In Plaisance, we found that the hospital’s response to the physician’s alleged breach of the standard of care required testimony about the standard of care from experts. In this case, though, the question is whether Dr. Skir-lis-Zavala was qualified to practice emergency medicine in general básed on her education, experience, and certifications. While expert testimony will surely be required, it is of a different character than what we found necessary in Plaisance. The applicable standard of care is not the proper administration of tPA, but the hospital’s decision-making process in evaluating qualifications necessary to work as an ER doctor. While we find this factor weighs in favor of finding that the claim sounds in malpractice, we note that the expert testimony is of a different nature than that which we found in Plaisance.
*566 An analysis of the hospital’s credentialing methods as they relate to Dr. Skirlis-Zavala does not require any assessment- of Brandi’s condition. This .third Coleman factor mitigates against considering this a malpractice matter.
The fourth Coleman factor is a determination of whether the incident occurred in the context of a physician-patient relationship, or was within the scope of activities a hospital is licensed to perform. In Plai-sance, 47 So.3d at 22, this court explained that Louisiana Revised Statutes 40:2114(E) provides that “[a] hospital shall establish rules, regulations, and procedures setting forth the nature, |,extent, and type of staff membership and clinical privileges, as well as the limitations placed by the hospital on said staff membership and clinical privileges for all health care providers practicing therein.” Thus, credentialing is within the scope of activities that a hospital is licensed to perform, and this factor weighs in favor of treating the claim as falling under the MMA.
The fifth factor questions whether the injury would have occurred if the patient had not sought treatment. If Brandi’s parents had not sought treatment for her at Opelousas General, this claim would never have been filed. We find this to be a peculiarly circular type of analysis. While Brandi’s alleged injuries relate to the treatment provided by Dr. Skirlis-Za-vala, the credentialing decisions of Opelou-sas General are not necessarily tied to the treatment of Brandi. We agree with the trial court that it is difficult to apply this factor to this case, but conclude that it weighs against treating the claim as malpractice.
There is no allegation of an intentional tort, so the final factor is not applicable in this case.
We find that the claim for negligent credentialing, when analyzed under the Coleman-framework, is not a claim of malpractice under the MMA. In so concluding, we are mindful that the limitations of the MMA are in derogation of general tort law, and should, therefore, be strictly construed in favor of plaintiffs. Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson, 04-451 (La.12/1/04), 888 So.2d 782.
Further, we note that the legislature in 2001 amended the definition of “malpractice” in La.R.S. 40:1299.41(A)(8) (since re-designated La.R.S. 40:1231.1(A)(13)) to include the “acts or omissions ...: in the training or supervision of health care providers[.]” 2001 La. Acts No. 713, § 1. The original | sbill introduced in the senate would have included “acts or omissions in the hiring, training, supervision, or retention of caregivers[.]” On three other occasions, bills were introduced in the’Louisiana legislature to include “credentialing” in the definition of medical malpractice. See 2005 House Bill No. 257; 2006 House Bill No. 260; and 2008 Senate Bill No. 509. Each of these bills failed to become law. We will -not create law by judicial fiat when, as here, the legislature clearly failed to do so.
We find no palpable error in this court’s previous denial of supervisory writs, and we affirm the judgment of the trial court finding that the claims of “negligent credentialing” are not claims of malpractice under the MMA. The case is remanded to the trial court for further proceedings. Costs of this appeal are assessed to the Opelousas General Hospital Authority.
AFFIRMED.
GREMILLION, J., dissqnts and assigns written reasons.