# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 17-895


**BRANDI BILLEAUDEAU, ET AL.**

**VERSUS**

**OPELOUSAS GENERAL HOSPITAL AUTHORITY, ET AL.**


**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 11-C-5112-D C/W 13-C-0097
HONORABLE D. JASON MECHE, DISTRICT JUDGE

**********

## VAN H. KYZAR
## JUDGE

**********

Court composed of Phyllis M. Keaty, John E. Conery, and Van H. Kyzar, Judges.


**AFFIRMED.**

Kara Hadican Samuels
Tiffany A. Morales
Kara Hadican Samuels & Associates, LLC
4004 Canal Street
New Orleans, LA 70119
(504) 558-9478
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Veronica Billeaudeau, individually and as curatrix of Brandi
    Billeaudeau
    Joseph Billeaudeau

Jennifer L. Thornton
Christian S. Chaney
Stanley, Reuter, Ross, Thornton & Alford, LLC
909 Poydras Street, Suite 2500
New Orleans, LA 70112
(504) 523-1580
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Veronica Billeaudeau, individually and as curatrix of Brandi
    Billeaudeau,
    Joseph Billeaudeau

Joseph L. McReynolds
J. Jerry Glas
Karen P. Holland
Deutsch Kerrigan, L.L.P.
755 Magazine Street
New Orleans, LA 70130-3672
(504) 581-5141
COUNSEL FOR DEFENDANT/APPELLANT:
    Opelousas General Hospital Authority

Nicholas Gachassin, III
Gary J. Delahoussaye
Brandon M. Rhodes
Gachassin Law Firm
P. O. Box 80369
Lafayette, LA 70598-0369
(337) 235-4576
COUNSEL FOR DEFENDANT/APPELLANT:
    Opelousas General Hospital Authority

George P. Hebbler, Jr.
Frances Irene McGinnis
Hebbler & Giordano, LLC
3501 N. Causeway Boulevard, Suite 400
Metairie, LA 70002
(504) 833-8007
COUNSEL FOR DEFENDANT/APPELLANT:
    Nautilus Insurance Company

George D. Fagan
Anton L. Hasenkampf
Leake & Andersson, LLP
1100 Poydras Street, Suite 1700
New Orleans, LA 70163
(504) 585-7500
COUNSEL FOR DEFENDANT/APPELLEE:
    National Union Fire Insurance Company of Pittsburgh, PA

William H. Parker, III
Jacob E. Favaron
Allen & Gooch
2000 Kaliste Saloom Road, Suite 400
Lafayette, LA 70508
(337) 291-1000
COUNSEL FOR DEFENDANT/APPELLEE:
    Louisiana Patients' Compensaton Fund (Opelousas General Hospital)
    Louisiana Patients' Compensation Fund (Dr. K. Skirlis-Zavala)

J. Gregory Vidrine
Mahtook & LaFleur
P. O. Box 617
Ville Platte, LA 70586
(337) 363-6211
COUNSEL FOR DEFENDANT/APPELLEE:
    Opelousas General Hospital

Alexander T. Reinboth
Louisiana Department of Justice, Civil
P. O. Box 94005
Baton Rouge, LA 70804
(225) 326-6000
COUNSEL FOR DEFENDANT/APPELLEE:
    State of Louisiana

**KYZAR, Judge.**

The plaintiffs, Veronica Billeaudeau, individually and as curatrix of Brandi Billeaudeau, and Joseph Doyle Billeaudeau, appeal the trial court judgment granting partial summary judgment in favor of the defendant, Opelousas General Hospital Authority, ordering that during the trial fault would be allocated according to claims and parties. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

The Billeaudeaus initially filed a claim under the Louisiana Medical Malpractice Act (MMA), La.R.S. 40:1231.1, et seq., and later filed suit alleging medical malpractice and general negligence against Opelousas General Hospital Authority (OGH), among other defendants, for serious injuries allegedly sustained by their daughter, Brandi, while she was being treated in the emergency department at OGH on June 20, 2010. Also named as a defendant was Nautilus Insurance Company (Nautilus), OGH's general liability insurer. The facts of this matter were set forth in detail by this court in *Billeaudeau v. Opelousas General Hospital Authority*, 15-1034 (La.App. 3 Cir. 4/6/16), 189 So.3d 561, *writ granted*, 16-846 (La. 6/28/16), 192 So.3d 781, wherein we held that the Billeaudeaus' negligent credentialing claim sounded in general negligence, as opposed to medical malpractice which would be pursued under the MMA. The supreme court reviewed the case and affirmed. *Billeaudeau v. Opelousas Gen. Hosp. Auth.*, 16-846 (La. 10/19/16), 218 So.3d 513.

The Billeaudeaus have settled their medical malpractice claims against Dr. Zavala and OGH, while reserving their right to seek damages in excess of $200,000.00 against the Louisiana Patient's Compensation Fund and Oversight Board (PCF), for Dr. Zavala's and OGH's medical malpractice, according to the provisions of the MMA. The Billeaudeaus also reserved their claim for negligent

credentialing against OGH, which was carved out of the medical malpractice claim, and is currently set for trial.

Following the decisions by this court and the supreme court, holding that the Billeaudeaus' negligent credentialing claim falls outside the scope of the MMA, OGH filed a Motion for Partial Summary Judgment on Need to Allocate Fault to Claims (Not Parties). In the motion, OGH asked that the trial court require the jury to allocate a percentage of fault to each party, Dr. Zavala and OGH, and to further assign a particular percentage of fault for both theories of liability asserted against OGH: medical malpractice and negligent credentialing. The motion was heard on May 5, 2017, after which the trial court granted the motion and later issued a written judgment on July 26, 2017, stating:

> [T]he Motion for Partial Summary Judgment on Need to Allocate Fault to Claims (Not Parties) of Opelousas General Hospital Authority is GRANTED and there is judgment herein decreeing that at the trial of this matter each of plaintiffs' separate causes of action against OGH for (1) malpractice and (2) negligent credentialing shall be assigned separate percentages of fault attributable, if any, to those respective claims or causes of action.

It is from this judgment that the Billeaudeaus appeal.

On appeal, the Billeaudeaus raise one assignment of error:

> The trial court failed to interpret La. Civ. Code art. 2323 and La. C. Civ. P. art. 1812(C) properly when it granted OGH's motion for partial summary judgment and ruled that the fact-finder must apportion fault between the Plaintiffs' two causes of action against OGH in addition to allocating fault among the parties.

## OPINION

The issue presented by this appeal rests entirely on statutory interpretation. "Questions of law, such as the proper interpretation of a statute, are reviewed by [an appellate] court under the de novo standard of review." *Land v. Vidrine*, 10-1342, p. 4 (La. 3/15/11), 62 So.3d 36, 39. "On legal issues, the appellate court

2

gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record." *State, Through La. Riverboat Gaming Comm'n v. La. State Police Riverboat Gaming Enf't Div.*, 95-2355, p. 5 (La.App. 1 Cir. 8/21/96), 694 So.2d 316, 319. "Appellate review of a question of law involves a determination of whether the lower court's interpretive decision is legally correct." *Johnson v. La. Tax Comm'n*, 01-964, p. 2 (La.App. 4 Cir. 1/16/02), 807 So.2d 329, 331, *writ denied*, 02-445 (La. 3/8/02), 811 So.2d 887.

The Billeaudeaus argue that in granting OGH's motion for partial summary judgment, the trial court failed to interpret La.Civ.Code art. 2323 and La.Code Civ.P. art. 1812(C) properly in ruling that the factfinder must apportion fault between the Billeaudeaus' two causes of action against OGH, in addition to allocating fault between it and Dr. Zavala.

Louisiana Civil Code Article 2323 provides, in part, as follows:

A.     In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

B.     The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

Louisiana Code of Civil Procedure Article 1812 further provides:

A.     The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact.

In that event, the court may submit to the jury written questions susceptible of categorical or other brief answer, or may submit written forms of the several special findings which might properly be made under the pleadings and evidence, or may use any other appropriate method of submitting the issues and requiring the written findings thereon. The court shall give to the jury such explanation and instruction concerning the matter submitted as may be necessary to enable the jury to make its findings upon each issue. If the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue omitted unless, before the jury retires, he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding, or if it fails to do so, it shall be presumed to have made a finding in accord with the judgment on the special verdict.

B. The court shall inform the parties within a reasonable time prior to their argument to the jury of the special verdict form and instructions it intends to submit to the jury and the parties shall be given a reasonable opportunity to make objections.

C. In cases to recover damages for injury, death, or loss, the court at the request of any party shall submit to the jury special written questions inquiring as to:

(1) Whether a party from whom damages are claimed, or the person for whom such party is legally responsible, was at fault, and, if so:

(a) Whether such fault was a legal cause of the damages, and, if so:

(b) The degree of such fault, expressed in percentage.

(2)(a) If appropriate under the facts adduced at trial, whether another party or nonparty, other than the person suffering injury, death, or loss, was at fault, and, if so:

(i) Whether such fault was a legal cause of the damages, and, if so:

(ii) The degree of such fault, expressed in percentage.

(b) For purposes of this Paragraph, nonparty means a person alleged by any party to be at fault, including but not limited to:

(i) A person who has obtained a release from liability from the person suffering injury, death, or loss.

4

(ii) A person who exists but whose identity is unknown.

(iii) A person who may be immune from suit because of immunity granted by statute.

(3) If appropriate, whether there was negligence attributable to any party claiming damages, and, if so:

(a) Whether such negligence was a legal cause of the damages, and, if so:

(b) The degree of such negligence, expressed in percentage.

(4) The total amount of special damages and the total amount of general damages sustained as a result of the injury, death, or loss, expressed in dollars, and, if appropriate, the total amount of exemplary damages to be awarded.

D. The court shall then enter judgment in conformity with the jury's answers to these special questions and according to applicable law.

The question presented herein is whether these statutes, individually or in combination, permit or prohibit a factfinder from assigning a percentage of fault to an individual defendant on each theory of liability allegedly committed by that defendant, while still assigning percentages of fault to other defendants or liable parties. While the comparative fault system in Louisiana requires the assignment of percentages of fault to each individual person, firm, or entity, including the plaintiff, that may have played a role in causing the harm complained of, the statute does not prescribe how this should be accomplished.

A pure comparative fault system was adopted in Louisiana in 1979 by Act No. 431. That act became effective only on August 1, 1980. It was specifically designed to ameliorate the harshness of the contributory negligence doctrine by apportioning losses between the plaintiff and defendant when both are negligent. This allocation of shares of negligence, however, is not an easy task for the factfinder, and the Louisiana statute does not describe with particularity how it should be accomplished.

5

*Watson v. State Farm Fire & Cas. Ins. Co.*, 469 So.2d 967, 971 (La.1985) (footnotes omitted).

Interestingly, in *Dumas v. State ex rel. Department of Culture, Recreation & Tourism*, 02-563 (La. 10/15/02), 828 So.2d 530, the supreme court applied the comparative fault scheme to the plaintiff's negligence claim against the state for injuries he suffered as a result of negligence, to require the trier of fact to consider the subsequent medical malpractice of the hospital who treated the plaintiff for the injuries suffered in the accident and assign percentages of fault to each. Later amendments to La.Civ.Code art. 2323 made clear that the allocation of fault to the various parties is to occur regardless of whether there are differing theories of liability as to these parties. The supreme court stated:

> [T]he amendments effected a change in Louisiana's tort policies such that our pre-1996 opinions holding that an original tortfeasor may be held liable for the victim's injuries caused by negligent medical treatment do not serve to bar the initial tortfeasor from presenting evidence relating to the alleged malpractice of the treating health care providers.

*Id.* at 531.

Thus, our comparative fault scheme allows the assignment of percentages of fault among all culpable parties, regardless of the theory of liability asserted as to each. The question becomes whether the comparative fault statute permits or excludes the further breakdown of a particular actor's fault, by percentage, based upon the asserted theories of liability against that individual actor. Indeed, in most cases, that distinction is unimportant to the overall recovery of the injured or damaged party. Here, on the other hand, it is extremely important given that the damages recoverable for one theory of liability, medical malpractice, are subject to a certain damage cap as imposed by the MMA, while the other theory of recovery, negligent credentialing, is subject to a different damage cap or no cap at all,

6

depending on whether the hospital is a private healthcare provider or a public healthcare provider. La.R.S. 13:5106.

We first look to the wording of the comparative-fault statute itself to determine if the assignment of separate percentages of fault for multiple theories of liability to a single tortfeasor is permissible. Louisiana Civil Code Article 2323(A) provides, without question, that the "degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined." As the supreme court expressed in *Watson*, 469 So.2d at 973-74 (footnote omitted), the statute does not prescribe the manner in which this is to be done:

> We recognize that a standard for determining percentages of fault has not been provided by the Legislature, and we are therefore presented with an opportunity to offer guidelines as we apportion fault in this instance. In so doing we have looked to the Uniform Comparative Fault Act, 2(b) and Comment (as revised in 1979), which incorporates direction for the trier of fact. Section 2(b) provides:
>
> > In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
>
> In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

While the law does not prescribe the method for which liability is to be apportioned, that nevertheless does not render the law invalid or unenforceable. Similarly, while the law provides for the apportionment of fault by percentage among the parties, it does not prohibit the further breakdown of a percentage of

7

fault for one party to account for different theories of liability. Obviously, the total of the percentages cannot exceed 100%, although this too is not spelled out in the statute. As Article 2323 is silent, we are permitted to "explore the article's purpose" to determine if it allows the requested action. *Miller v. LAMMICO*, 07-1352, p. 19 (La. 1/16/08), 973 So.2d 693, 706. "It is a familiar rule of statutory construction that the general purpose and object of the law must be kept in mind and the statute given such fair and reasonable interpretation as will effect the purpose and object for which it was enacted." *J.M. Brown Constr. Co. v. D & M Mech. Contractors, Inc.*, 275 So.2d 401, 404 (La.1973).

> The fundamental purpose of Louisiana's comparative fault scheme is to ensure that each tortfeasor is responsible only for that portion of the damage he has caused. *Dumas*, 02-0563, p. 14, 828 So.2d 530, 538. Therefore, each tortfeasor is responsible for the damage he has *caused*, regardless of any potential for reduction under the Medical Malpractice Act. The percentage of the damages assigned to the tortfeasor by the fact finder is that specific portion of the total amount of damages that the fact finder determines the tortfeasor has caused, without regard to the statutory cap. Only when a Qualified Health Care Provider causes damage in excess of $500,000 does the Medical Malpractice Act damages cap apply. La. R.S. 40:1299.42(B)(1). Thus, in accordance with the purpose of the comparative fault scheme, a doctor who has committed malpractice is responsible for the damages he causes, and only after that amount exceeds the statutory damages cap will the victim's recovery be reduced as a result of the Medical Malpractice damages cap found in La. R.S. 40:1299.42(B)(1).

*Miller*, 973 So.2d at 706 (footnote omitted).

Determining multiple theories of liability as they apply to a single party, among others, is certainly not a novel practice in our courts. Multiple theories of liability often must be reviewed and determined independently by the jury or factfinder in reaching a verdict. This requires the factfinder, within the verdict form, to render a decision as to whether the plaintiff has proven a particular theory

8

of liability as a cause-in-fact of his/her injury and whether it was a substantial factor in bringing about the harm complained of, as reflected below:

> The supreme court observed that EMTALA has created a cause of action that is to be considered "separate and distinct from, and not duplicative of, state malpractice causes of action." *Spradlin* [*v. Acadia-St.Landry Medical Foundation*], 98-1977, p. 9 [(La. 2/29/00)]; 758 So.2d [116,] 121. Although the claims are distinct, a malpractice claim and a dumping claim may, at times, overlap. *Id. See also Coleman v. Deno*, 01-1517, 01-1519, 01-1521 (La.1/25/02); 813 So.2d 303. Insofar as the screening claim is concerned, a plaintiff must demonstrate that the treatment rendered at the hospital differed from the treatment received by those who typically are cared for at the facility. *Collins v. State ex rel. Louisiana Health Care Authority*, 99-2307, 99-2308 (La.App. 4 Cir. 7/12/00); 774 So.2d 167, *writ denied,* 00-2633 (La.11/17/00); 775 So.2d 439. Furthermore, the required "'appropriate medical screening examination is not judged by its proficiency in accurately diagnosing the patient's illness, but rather by whether it was performed equitably in comparison to other patients with similar symptoms.'" *Id.* at p. 5; 171 (quoting *Marshall v. East Carroll Parish*, 134 F.3d 319, 322 (5th Cir.1998)).

> . . . .

> The plaintiff also argued that Dauterive was negligent in failing to properly credential Dr. Castro as an emergency room physician. The evidence indicated that Dr. Castro, a Board Certified Family Practitioner, was credentialed by the hospital for family practice, not emergency room medicine. In support of his contention that this failure to credential Dr. Castro in emergency room medicine was negligent, the plaintiff offered the testimony of Dr. Richard Bucci, accepted by the trial court as an expert in emergency medicine. Dr. Bucci stated that in 1994, it was the practice to credential physicians in emergency medicine. He also explained that, although not every physician who works in an emergency room is Board Certified in emergency medicine, one would expect the physician to have some training in emergency medicine. Due to this testimony, the plaintiff contends, the jury erred in failing to find that Dr. Castro was properly credentialed.

> . . . .

> The plaintiff argued that Dauterive was liable for what he considers to be the gross negligence of Dr. Castro. His argument in his brief to this court in this regard is as follows: "The conduct of Dr. Castro clearly was grossly negligent. Dr. Castro was told at least twice by Bonnie [that] Darrell's condition was not due to his being drunk, but he callously ignored her. Ignoring what is obvious is gross negligence."

*Scott v. Dauterive Hosp. Corp.*, 02-1364, pp. 19-22 (La.App. 3 Cir. 4/23/03), 851 So.2d 1152, 1166-67, *writ denied*, 03-2005 (La. 10/31/03), 857 So.2d 487 (alteration in original).

The logical extension of this function is the assessment of the percentage of fault assigned to a single tortfeasor as per each theory of fault in appropriate cases. Applying the *Watson* factors to aid in assessing percentages of fault, a trier of fact can determine whether each claimed theory of liability as to a given tortfeasor is a cause-in-fact of the harm complained of and assign a percentage of fault to each theory. A hypothetical case illustrates this application: Plaintiff A sues Hospital X, a private, qualified healthcare provider covered by the MMA, for claims in malpractice and a claim arising from negligent credentialing, and further includes a medical malpractice claim against Dr. Z, a qualified healthcare provider covered under the MMA; the trier of fact finds that Hospital X is 50% at fault as a result of its negligent credentialing, that Hospital X is not at fault for medical malpractice, thus 0% for medical negligence; and that Dr. Z is 50% at fault for medical negligence. The trier of fact then awards a total of $2,000,000.00 in general damages (assuming past and future medicals are inapplicable for purposes of illustration). Applying this allocation of fault, the verdict would require Dr. Z to pay $500,000.00 ($1,000,000.00 less the MMA cap of $500,000.00), and Hospital X would be required to pay $1,000,000.00 since the MMA cap does not apply to the negligent credentialing liability of the private hospital.

Thus, we conclude that the trial court did not err in granting OGH's motion to permit the jury questionnaire to query as to whether each cause of action has been established by the Billeaudeaus and to assign a percentage of fault to each theory of liability, if the answer is in the affirmative. This is within the wide discretion given the trial court "in determining and framing questions to be posed

10

as special jury interrogatories." *Wiltz v. Bros. Petroleum, L.L.C.*, 13-332, 13-333, 13-334, p. 20 (La.App. 5 Cir. 4/23/14), 140 So.3d 758, 773, *writs denied*, 14-1252, 14-1298 (La. 10/10/14), 151 So.3d 581, 583. In consideration hereof, we are mindful of the standard of review for jury instructions. In *Nicholas v. Allstate Insurance Co.*, 99-2522, p. 8 (La. 8/31/00), 765 So.2d 1017, 1023, the Louisiana Supreme Court explained:

> Louisiana jurisprudence is well established that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. *Melancon v. Sunshine Const., Inc.*, 97-1167 (La.App. 1 Cir. 5/15/98), 712 So.2d 1011. The basis for this rule of law is that trial courts are given broad discretion in formulating jury instructions and it is well accepted that a trial court judgment will not be reversed so long as the charge correctly states the substance of the law. *United States v. L'Hoste*, 609 F.2d 796, 805 (5 Cir.), *cert. denied*, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980).

Based on the wide discretion afforded trial courts in framing and formulating special verdicts and jury instructions, we find no merit in this assignment of error.

## DISPOSITITON

For the reasons assigned herein, we affirm the judgment of the trial court. Costs of this appeal are assessed to the plaintiffs, Veronica and Joseph Billeaudeau.

**AFFIRMED.**

11