# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 17-894

**BRANDI BILLEAUDEAU ET AL.**

**VERSUS**

**OPELOUSAS GENERAL HOSPITAL AUTHORITY, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 11-C-5112-D C/W 13-C-0097
HONORABLE D. JASON MECHE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Phyllis M. Keaty, John E. Conery, and Van H. Kyzar, Judges.

**REVERSED; RENDERED; AND REMANDED.**

Kara Hadican Samuels
Tiffany A. Morales
Kara Hardican Samuels & Associates, LLC
4004 Canal Street
New Orleans, LA 70119
(504) 558-9478
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Veronica Billeaudeau, individually and as curatrix of Brandi
    Billeaudeau
    Joseph Billeaudeau

Jennifer L. Thornton
Christian S. Chaney
Stanley, Reuter, Ross, Thornton & Alford, LLC
909 Poydras Street, Suite 2500
New Orleans, LA 70112
(504) 523-1580
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Veronica Billeaudeau, individually and as curatrix of Brandi
    Billeaudeau,
    Joseph Billeaudeau

Joseph L. McReynolds
J. Jerry Glas
Karen P. Holland
Deutsch Kerrigan, L.L.P.
755 Magazine Street
New Orleans, LA 70130
(504) 581-5141
COUNSEL FOR DEFENDANT/APPELLANT:
    Opelousas General Hospital Authority

George P. Hebbler, Jr.
Frances Irene McGinnis
Hebbler & Giordano, LLC
3501 N. Causeway Boulevard, Suite 400
Metairie, LA 70002
(504) 833-8007
COUNSEL FOR DEFENDANT/APPELLANT:
    Nautilus Insurance Company

Nicholas Gachassin, III
Gary J. Delahoussaye
Brandon M. Rhodes
Gachassin Law Firm
P. O. Box 80369
Lafayette, LA 70598-0369
(337) 235-4576
COUNSEL FOR DEFENDANT/APPELLANT:
    Opelousas General Hospital Authority

George D. Fagan
Anton L. Hasenkampf
Leake & Andersson, LLP
1100 Poydras Street, Suite 1700
New Orleans, LA 70163
(504) 585-7500
COUNSEL FOR DEFENDANT/APPELLEE:
     National Union Fire Insurance Company of Pittsburgh, PA

William H. Parker, III
Jacob E. Favaron
Allen & Gooch
2000 Kaliste Saloom Rd., Suite 400
Lafayette, LA 70508
(337) 291-1000
COUNSEL FOR DEFENDANT/APPELLEE:
     Louisiana Patients' Compensaton Fund (Opelousas General Hospital)
     Louisiana Patients' Compensation Fund (Dr. K. Skirlis-Zavala)

J. Gregory Vidrine
Mahtook & LaFleur
P. O. Box 617
Ville Platte, LA 70586
(337) 363-6211
COUNSEL FOR DEFENDANT/APPELLEE:
     Opelousas General Hospital

Alexander T. Reinboth
Louisiana Department of Justice, Civil
P. O. Box 94005
Baton Rouge, LA 70804
(225) 326-6000
COUNSEL FOR DEFENDANT/APPELLEE:
     State of Louisiana

**KYZAR, Judge.**

The plaintiffs, Veronica Billeaudeau, individually and as curatrix of Brandi Billeaudeau, and Joseph Billeaudeau, and the defendants, Opelousas General Hospital Authority, d/b/a Opelousas General Hospital, and Nautilus Insurance Company, appeal the granting of a partial motion for summary judgment, which dismissed National Union Fire Insurance Company of Pittsburg, PA as a party to the Billeaudeaus' negligent credentialing claim against OGH. For the reasons assigned, we reverse, render, and remand for further proceedings.

## DISCUSSION OF THE RECORD

This is the second of three appeals before us involving the same parties. The facts of the case were set forth in detail by this court in *Billeaudeau v. Opelousas General Hospital Authority*, 15-1034 (La.App. 3 Cir. 4/6/16), 189 So.3d 561, *writ granted*, 16-846 (La. 6/28/16), 192 So.3d 781, wherein we held that the Billeaudeaus' negligent credentialing claim sounded in general negligence as opposed to a claim for medical malpractice, which was required to be pursued under the Louisiana Medical Malpractice Act (MMA), La.R.S. 40:1231.1, et seq. The supreme court reviewed the case and affirmed. *Billeaudeau v. Opelousas Gen. Hosp. Auth.*, 16-846 (La. 10/19/16), 218 So.3d 513.

As we stated in the first appeal before us, *Billeaudeau v. Opelousas General Hospital Authority*, 17-893 (La.App. 3 Cir. _/_/_), _ So.3d _, the Billeaudeaus initially filed a claim against Opelousas General Hospital Authority, d/b/a Opelousas General Hospital (OGH) and its emergency department physician, Dr. Kondilo Skirlis-Zavala (Dr. Zavala), under the MMA for serious injuries allegedly sustained by the Billeaudeaus' daughter, Brandi, while being treated at OGH on June 20, 2010. In their original petition, filed on January 14, 2013, the Billeaudeaus alleged:

Defendant, Opelousas General Hospital, is liable unto Petitioners because Ms. Billeaudeau's injuries and damages, which will be specified hereinafter, were proximately and legally caused by the fault, including negligence, of Opelousas General Hospital . . . including the following negligent acts of omission and commission, among others, which may be shown during the trial:

. . . .

e.    Negligent credentialing of Dr. Zavala.

On March 27, 2015, the Billeaudeaus filed a motion for partial summary judgment, seeking a ruling by the trial court that their negligent credentialing claim was not subject to the MMA. Following a hearing, the trial court granted judgment in favor of the Billeaudeaus, declaring that the negligent credentialing claim sounded in negligence and was outside the scope of the MMA. Judgment was granted in this matter on July 2, 2015. Thereafter, the Billeaudeaus amended their petition to add a claim in tort for negligent credentialing against OGH and its general liability insurers, National Union Fire Insurance Company of Pittsburg, PA (National Union) and Nautilus Insurance Company (Nautilus) under the Louisiana Direct Action Statute.[1] On July 8, 2015, OGH provided notice to National Union of the lawsuit for the first time.

National Union issued a policy of insurance to OGH, No. 01-701-24-67, with effective dates of October 19, 2014 through October 19, 2015. The policy included four coverage sections: Directors and Officers (D&O), Employment Practices Liability (EPL), Fiduciary Liability (FLI), and Crime. The National Union policy is a claims-made and reported policy, and the notice provided on the declarations page of the policy states: **"COVERAGE WITHIN THIS POLICY IS GENERALLY LIMITED TO LOSS FROM CLAIMS FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD AND REPORTED**

---

[1] La.R.S. 22:1269.

2

**TO THE INSURER AS THE POLICY REQUIRES."** Further, the D&O Coverage Section of the policy provides: "This policy shall pay on behalf of the **Organization Loss** arising from a **Claim** first made against the **Organization** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any actual or alleged **Wrongful Act** of the **Organization**." The EPL and FLI Coverage Sections include language similar to that found in the D&O Coverage Section.

The term "Claim" is defined in the D&O Coverage Section as:

(1)     a written demand for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute of limitations); or

(2)     a civil, criminal, regulatory or administrative proceeding for monetary, non-monetary or injunctive relief which is commenced by:

(i)     service of a complaint or similar pleading;

(ii)    return of an indictment, information or similar document (in the case of a criminal proceeding); or

(iii)   receipt or filing of a notice of charges.

Concerning the notice requirement, the National Union policy, in its general terms and conditions under Clause 7, as amended in Endorsement Number Fourteen, further specified:

The **Insureds** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of any **Claim** made against an **Insured** or any **Crisis Management Event** (as defined in the D&O Coverage Section) as soon as practicable after the **Organization's** Risk Manager or General Counsel (or equivalent position) first becomes aware of the **Claim**; or (ii) the **Crisis Management Event** commences, but in all events a **Claim** must be reported no later than either:

(1)     anytime during the **Policy Period** or during the **Discovery Period** (if applicable); or

(2)     within ninety (90) days after the end of the **Policy Period** or the **Discovery Period** (if applicable).

3

The policy also has a bodily injury coverage exclusion. The term "Bodily Injury" is defined within the General Terms and Conditions section of the policy as "physical injury, sickness or disease (other than emotional distress or mental anguish), including death resulting therefrom." The Bodily Injury exclusion provided that coverage is excluded for any payment for loss incurred in connection with a claim "alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly, **Bodily Injury** or **Property Damage**; provided, however, that with respect to the FLI Coverage Section only, this exclusion shall not apply to **Defense Costs** incurred in the defense of a **Claim** alleging a **Breach of Fiduciary Duty**."

The National Union policy also provided an exclusion for damages for a claim "alleging, arising out of, based upon or attributable to the facts alleged, or to the same or **Related Wrongful Act** alleged or contained in an **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time." The policy defines "Related Wrongful Act" as "a **Wrongful Act** which is the same, related or continuous, or **Wrongful Act** which arises from a common nucleus of facts. **Claims** can allege **Related Wrongful Acts** regardless of whether such **Claims** involve the same or different claimants, Insureds or legal causes of action."

On April 3, 2017, National Union filed a motion for summary judgment alleging that its policy did not provide coverage for the negligent credentialing claims. It claimed that the policy of insurance issued to OGH by National Union did not provide coverage for losses sustained as the result of the Billeaudeaus' negligent credentialing claim against OGH, as it was not put on notice of the claim in a timely manner as required by the policy language. National Union

4

additionally urged that the policy excluded coverage for this incident under the "Bodily Injury" exclusion and that it excluded coverage for any claim covered by and noticed under an insurance policy that its policy succeeded. National Union's motion was opposed by the Billeaudeaus, OGH, and Nautilus. Following a May 5, 2017 hearing, the trial court granted National Union's motion as per written reasons for judgment on July 13, 2017, for the following reasons (footnote omitted):

> Coverage under the National Union policy requires "a **Claim** first made against such **Individual Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer**..." The plain terms of insurance policies must be enforced. See La. C.C. art. 2046; *Gorman v. City of Opelousas*, 2013-1734 (La. 7/1/14, 15), 148 So.3d 888, 898. As argued by National Union in its various briefings to the court, the event that triggered policy coverage occurred **prior to** the applicable policy period. The claim was "first made" well in advance of the applicable policy period. Therefore, National Union's policy provisions on the making and reporting of claims requires the exclusion of coverage.

Formal judgment was signed on July 26, 2017, dismissing National Union from the suit. The Billeaudeaus, OGH, and Nautilus have all appealed.

Each of the appellants raised assignments of error on appeal, which can be summarized by that assigned by the Billeaudeaus, as follows:

> The trial court erred in concluding that the negligent credentialing claim was first made against OGH prior to the policy period during which it was reported to National Union, as OGH had no possible exposure outside of the LMMA and negligent credentialing did not exist as a stand-alone cause of action until the trial court so held in July 2015, which was during the applicable policy period of October 2014 - October 2015.

**OPINION**

The standard of appellate review applicable to summary judgment is well settled. La.Code Civ.P. art. 966. "Appellate review of the granting of a motion for summary judgment is *de novo*, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate." *Smitko v.*

5

*Gulf South Shrimp, Inc.*, 11-2566, p. 7 (La. 7/2/12), 94 So.3d 750, 755; *see Billeaudeau*, __ So.3d __.

As we stated in the first appeal, the summary judgment procedure is particularly appropriate for determining certain insurance coverage issues. *Sensebe v. Canal Indem. Co.*, 10-703 (La. 1/28/11), 58 So.3d 441. The principles of insurance contract interpretation were reviewed by this court in *Burns v. Couvillion*, 10-763, pp. 8-9 (La.App. 3 Cir. 12/8/10), 53 So.3d 540, 546 (alteration in original), wherein we stated:

> "An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles." *Orazio v. Henderson*, 01-28, p. 2 (La.App. 3 Cir. 7/11/01), 790 So.2d 754, 755 (quoting *Ledbetter v. Concord Gen. Corp.*, 95-809, p. 3 (La.1/6/96), 665 So.2d 1166, 1169, *amended on other grounds*, 95-809 (La.4/18/96), 671 So.2d 915). Additionally, "[t]he contract has the effect of law for the parties. La.Civ.Code art. 1983." *Id.* When the language in an insurance contract is clear and explicit, no further interpretation may be made in search of the party's intent. *Hill v. Shelter Mut. Ins. Co.*, 05-1783, 05-1818 (La.7/10/06), 935 So.2d 691. A court should not strain to find ambiguity where none exists. *Hebert v. Webre*, 08-60 (La.5/21/08), 982 So.2d 770.

Moreover, the principles pertaining to the interpretation of insurance policy exclusions were reviewed by the supreme court in *Ledbetter v. Concord General Corp.*, 95-809, p. 4 (La. 1/6/96), 665 So.2d 1166, 1169, *amended*, 95-809 (La. 4/18/96), 671 So.2d 915, as follows:

> Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. *Garcia v. St. Bernard Parish School Board*, 576 So.2d 975, 976 (La.1991). However, the rule of strict construction does not "authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists." *Muse v. Metropolitan Life Ins. Co.*, 193 La. 605, 192 So. 72, 75 (1939). Insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94); 634 So.2d 1180, 1183.

Here, the Billeaudeaus, OGH, and Nautilus all argue that the trial court erred in finding that OGH's notice of the "negligent credentialing" claim to National Union was untimely and, thus, excluded from coverage by the terms of its policy, even though OGH notified National Union immediately following the trial court's ruling that the negligent credentialing claim sounded in negligence. National Union argues, and the trial court accepted, that regardless of the characterization of the claim of "negligent credentialing" as one in negligence or one of medical malpractice, the claim was made and arose as a result of the June 20, 2010 incident at the hospital. The "negligent credentialing" allegation was indeed first asserted as part and parcel of the issues presented by the Billeaudeaus to the medical review panel formed under the guidelines of the MMA, as follows:

Opelousas General Hospital is responsible for the actions of Nurse Richardson, and thus, bears fault in this matter. In addition, the hospital failed to ensure that Dr. Zavala was qualified to work alone in the emergency department at the South Campus (negligent credentialing), and failed to supervise Dr. Zavala. In fact, it has been established that although the hospital had a written stroke protocol and a written transfer protocol, Dr. Zavala had never seen either one. If not for this litigation, Dr. Zavala might not ever have seen the hospital's written protocols, a fact which is unforgivable.

The Billeaudeaus additionally alleged "negligence credentialing" in their original petition against OGH under the MMA. It was then, according to National Union, that OGH had the obligation to put all applicable insurance companies on notice of the claim. In its motion for summary judgment, National Union argues that coverage under its policy is not provided for three reasons:

[T]he National Union Policy does not provide coverage to Opelousas General for the claims alleged in Plaintiffs' lawsuit for three reasons. First, the National Union Policy is a "claims-made" policy, whereby coverage is effective only if the claim is *first made* and reported during the applicable policy period, i.e., October 19, 2014 to October 19, 2015. The "claim" now asserted by Plaintiff, however, was indisputably first made no later than January 2013 when this action was filed—years before the inception of the National Union Policy. Second, there is no coverage under the National Union Policy for the

7

independent reason that the National Union Policy expressly excludes coverage for any claim "alleging, arising out of, based upon, attributable to or in any way involving" bodily injury, which indisputably includes Plaintiffs' lawsuit. Finally, the National Union Policy expressly excludes coverage for any claim "alleging, arising out of, based upon [or] attributable to" the circumstances forming basis of any claim reported under any insurance policy the National Union Policy "may succeed in time." Here, however, Opelousas General reported a claim to Nautilus Insurance Company in June 2011, under a Nautilus policy with a policy period of November 1, 2010 to November 1, 2011, based on the same facts which now form the basis of this action.

We disagree with National Union's arguments, finding that it was error for the trial court to conclude that OGH's notice to National Union, of the "negligent credentialing" claim arising as a negligence claim and first recognized by the trial court as such in July 2015, by this court in April 2016, and finally by the supreme court in October 2016, was untimely and, thus, excluded from coverage.

The policy in question is without a doubt a "claims-made and reported" policy. Claims-made policies differ from "occurrence" policies. In *Anderson v. Ichinose*, 98-2157, pp. 5-6 (La. 9/8/99), 760 So.2d 302, 305, the court quoted a "seminal statement" on the subject of claims-made versus occurrence policies from Sol Kroll, The Professional Liability Policy "Claims Made," 13 Forum 842, 843 (1978), as follows:

> With the development of a more complex society, it became more reasonable, particularly with respect to the activities of professionals, to insure against the making of claims, rather than the happening of occurrences, and "claims made" insurance developed to meet a need for professionals to insure against the making of a claim as the insured event, rather than having to struggle with traditional concepts and difficulties inherent in determining whether the "event" insured against was the commission of an act, error or omission or the date of discovery thereof or the date of injury caused thereby.

> The major distinction between the "occurrence" policy and the "claims made" policy constitutes the difference between the peril insured. In the "occurrence" policy, the peril insured is the "occurrence" itself. Once the "occurrence" takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the "claims made" policy, it is the making of the

8

claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place.

Further, in *Regions Bank v. Kountz*, 05-1106, p. 6 (La.App. 3 Cir. 5/31/06), 931 So.2d 506, 511 (citation omitted), this court stated as follows in differentiating claims-made policies:

> Pure claims-made policies shift to the insured only the risk of claims incurred but not made, whereas claims-made-and-reported policies shift the risks both of claims incurred but not made and of claims made but not reported. The purpose of a claims-made-and-reported policy is to alleviate problems in determining when a claim was made or whether an insured should have known a claim was going to be made.

In this case, the "occurrence" was the event at the hospital on June 20, 2010, the treatment rendered to Brandi Billeaudeau. However, in National Union's claims-made and reported policy, it is the claim first made against OGH and reported to National Union during the policy period which is the "event and peril being insured[.]" *Anderson*, 760 So.2d at 305. Under the facts at issue, we find that the claim, which was the "negligent credentialing" claim sounding in general negligence, was not cognizable by OGH until the trial court's July 2, 2015 ruling holding as such.

Prior to that time, it was unreasonable to assert that OGH should have known that the negligent credentialing claim was being made under general negligence as opposed to a medical malpractice claim as the claim was considered covered under the auspices of the MMA. Within eight days of learning that the negligent credentialing claim was indeed a negligence claim, OGH reported it to National Union. Thus, the claim sounding in general negligence against OGH was first made and then reported to National Union within the time provided for in National Union's policy. As such, the trial court erred in determining otherwise.

9

To have required OGH to notify National Union (or any insurance company that issued a like policy) of the claim as early as July 2010, or even after the initial medical malpractice suit was filed, would have been a vain and useless act on its part. The National Union policy did not cover claims for medical malpractice.[2] "Negligent credentialing," prior to the trial courts' ruling, as affirmed by this court and the supreme court, was considered a medical malpractice claim. National Union, or any similarly situated insurer, surely would have asserted this exclusion and been summarily dismissed from the litigation. The claim, sounding in negligence, was not cognizable until July 2, 2015 at the earliest, and arguably not until the final ruling of the supreme court. Thus, OGH could not have known that the policy of insurance issued by National Union might indeed provide coverage for the claim now recognized in general negligence as opposed to a claim covered under the MMA. While the occurrence took place with the June 20, 2010 treatment rendered to Brandi at OGH, the actual claim in general negligence, outside the scope of the MMA, did not arise until July 2, 2015. Indeed, recognizing a separate cause of action, although related to the previous occurrence, has been addressed by the supreme court in *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So.2d 1234, 1238, n.5 (La.1993), wherein the court stated:

> The task of defining cause of action in various contexts has perplexed Louisiana courts for many years. The task is relatively simple when the separate causes of action arise out of entirely separate facts. However, the task is substantially more difficult when the possibly separate causes of action arise out of overlapping sets of operative facts. These difficult questions must be addressed on a case-by-case basis.

---

[2] Exclusion (j), contained in Endorsement Sixteen of National Union's policy, provides that it will not be liable for any payment for loss in connection with a claim "alleging, arising out of, based upon or attributable to the **Insureds** performance or rendering of or failure to perform or render medical or other professional services or treatments for others[.]"

This is such a case. The "cause of action" giving rise to OGH's requirement to notify National Union, its insurer who potentially had exposure to coverage of the claim, did not appear until, at the latest, when the supreme court put to rest the *res nova* issue of whether negligent credentialing was a distinct action outside of medical malpractice and coverage under the MMA. Although the operative facts were the same as presented in the petition, those facts were not recognized as giving rise to a legally separate cause of action in negligence until the Billeaudeaus presented the issue and the trial court weighed in. As noted by Justice Knoll in *Billeaudeau*, 218 So.3d at 527, "the tortious conduct alleged herein, *i.e.*, OGH's negligent administrative decision making, is separate and distinct from the medical decisions and conduct directly related and integral to the rendering of medical care and treatment by the health care providers to the patient in this case, *i.e.*, the medical malpractice covered by and to subject to the LMMA." Here, OGH's negligent credentialing of Dr. Zavala predated the facts giving rise to the Billeaudeaus' medical malpractice claim, but the claim against OGH for that negligent credentialing as a pure negligence claim was not made against OGH until July 2015, and was properly reported to National Union shortly thereafter. Thus, we reverse the decision of the trial court granting summary judgment in favor of National Union on this ground.

However, that does not end our inquiry. The motion for summary judgment on behalf of National Union also asserted that the policy excluded coverage for damages arising from "bodily injury" and for any claim "'alleging, arising out of, based upon [or] attributable to' the circumstances forming the basis of any claim reported under any insurance policy" that its policy "'may succeed in time.'"

National Union argues that there is no coverage under its policy for the independent reason that the policy expressly excludes coverage for any claim

"'alleging, arising out of, based upon, attributable to or in any way involving' bodily injury, which indisputably includes the Billeaudeaus' suit.'" However, the term "Bodily Injury" is defined within the General Terms and Conditions section of the policy as "physical injury, sickness or disease (other than emotional distress or mental anguish), including death resulting therefrom." The claim made on behalf of Brandi arising from the treatment she received at OGH includes damages for mental anguish and emotional distress. Furthermore, Veronica and Joseph Billeaudeau allege that they suffered damages pursuant to La.Civ.Code art. 2315.6, which allows recovery of damages for mental anguish and emotional distress.

The Billeaudeaus and Nautilus further argue that the language of Endorsement Number Fourteen is ambiguous such that the "Bodily Injury" exclusion should be read out of National Union's policy. Endorsement Number Fourteen contains the following heading:

**NOT-FOR-PROFIT RISK PROTECTOR® AMENDATORY ENDORSEMENT (NO BI/PD EXCLUSION AMENDMENT) (D&L, EPL, & FLI COVERAGE SECTIONS)**

The Billeaudeaus and Nautilus argue that the heading of this endorsement, **"(NO BI/PD EXCLUSION AMENDMENT),"** could be read to mean that the "BI" (bodily injury) or "PD" (property damage) exclusion has been removed from the General Terms and Conditions of National Union's policy, such that ambiguity exists in the policy and coverage should be allowed for bodily injury. However, if Endorsement Number Fourteen is read in conjunction with Endorsement Number Sixteen, it is obvious that **"NO BI/PD EXCLUSION AMENDMENT"** simply means that Endorsement Number Fourteen does not contain an amendment to the Bodily Injury or Property Damage exclusions contained in the General Terms and

12

Conditions of National Union's policy. The heading of Endorsement Number Sixteen provides as follows:

**NOT-FOR-PROFIT HEALTH CARE ORGANIZATION**
**AMENDATORY ENDORSEMENT**
**(ANTITRUST EXCLUSION DELETED)**
**(D&O AND EPL COVERAGES)**

Thus, if National Union intended to delete the Bodily Injury exclusion from its policy, it would have stated so as it did the Antitrust Exclusion in Endorsement Number Sixteen.

A plain reading of the Bodily Injury exclusion in National Union's policy results in a finding that it does not cover damages for physical injuries or illness, including death, but it does provide coverage for mental anguish and emotional distress arising from the actions of OGH and its employees. The granting of summary judgment in favor of National Union based solely on this exclusion is improper. However, we do find that there should be judgment in favor of National Union in part, finding that there is no coverage provided under the terms of the policy for damages for the physical injuries allegedly sustained by Brandi.

In its final argument, National Union asserts that because OGH reported a claim to Nautilus in June 2011, under a Nautilus insurance policy with a policy period of November 1, 2010 to November 1, 2011, based on the same facts which now form the basis of this action, its policy excludes coverage. In its appellate brief, National Union alleges (footnotes omitted), "It is undisputed that OGH reported a **Claim** to Nautilus on June 28, 2011, after it received notice that a Medical Review Panel had been convened to review Brandi's June 20, 2010 treatment at OGH. This **Claim** was reported under a Nautilus policy with a policy period of November 1, 2010 to November 1, 2011."

13

National Union's argument assumes, however, that its policy is a successor policy to Policy Number PFP 1000052_P-3, which was issued by Nautilus to OGH, with an effective date of November 1, 2010 to November 1, 2011. However, because no proof was offered that National Union's policy succeeded Nautilus' policy, summary judgment on this issue is inappropriate. The Nautilus policy that National Union referred to was a professional liability or medical malpractice insurance policy, which was designed to cover the loss, if any, caused by medical malpractice. Certainly, OGH notified Nautilus when it was sued for malpractice, including the negligent credentialing claim, which at the time was covered as a malpractice claim. The National Union policy is admittedly a Directors and Officers (D&O), Employment Practices Liability (EPL), Fiduciary Liability (FLI), and Crime Liability insurance policy, which specifically excludes coverage for medical malpractice. Nautilus' and National Union's policies provide different coverages for different purposes, and while National Union's policy was issued after Nautilus' professional liability policy, it was not a policy that was meant to or in fact designed to "succeed in time" the Nautilus policy. Thus, the reporting of the claim to Nautilus does not relieve National Union from its coverage responsibility, if any, under its policy. If that was its intent, we conclude that the language is at best ambiguous and must be interpreted against the insurer.

We, thus, conclude that National Union's policy was not a successor policy to the policy issued by Nautilus. Nautilus' policy did not and was not intended to cover the same liability as National Union's policy. Accordingly, we conclude that National Union is not entitled to summary judgment based on the prior reporting provision exclusion.

14

## DISPOSITION

For the reasons stated herein, we reverse the decision of the trial court granting summary judgment in favor of National Union Insurance Company of Pittsburg, PA; we render partial summary judgment in favor of National Union Insurance Company of Pittsburg, PA, finding that the policy of insurance in question excludes coverage for actual bodily injury damages, but does provide coverage for mental anguish and emotional distress damages; and we remand the matter for proceedings consistent herewith. Costs of this appeal are assessed to National Union Insurance Company of Pittsburg, PA.

**REVERSED; RENDERED; AND REMANDED.**

15